Larry LARA Appellant,

v.

STATE of Texas Appellee.

No. 11–88–177–CR.

Court of Appeals of Texas,
Eastland.

Nov. 17, 1988.

Stanley Kirk, Houston, for appellant.

John B. Holmes, Dist. Atty., Houston, for appellee.

## OPINION

McCLOUD, Chief Justice.

The jury found Larry Lara, appellant, guilty of aggravated kidnapping. The trial court assessed his punishment at 45 years confinement in the Texas Department of Corrections. We affirm.

The record reflects that appellant and others followed Katrina Mayfield and her companion to Mayfield's apartment. The men held a gun to Mayfield's back and ordered her inside her apartment. They forced Mayfield, her companion, her roommate, and another person present in the apartment to sit on the floor. Appellant and his partners had a pistol, an open switchblade, and a black nine millimeter Uzi machine gun. Appellant and his partners took wallets, rings, and jewelry from the victims. Appellant threatened to kill Mayfield if she spoke. A partner kicked and beat Mayfield's companion. Appellant held a gun to Mayfield, forcing her to ride as a passenger in a car to another location. The police learned of the kidnapping, intervened, rescued Mayfield, and arrested appellant. The sufficiency of the evidence is not challenged.

■ For the first time on appeal, appellant's appointed attorney who did not try the case contends that the record fails to show that appellant was furnished an interpreter to translate the testimony of adverse witnesses in denial of his right to personally confront witnesses against him. We disagree.

Appellant, a Puerto Rican male who had lived in the United States since approximately 1975, neither requested an interpreter nor objected to the absence of an interpreter at any time during the trial. The record reflects that appellant answered "not guilty" after the reading of the indictment. Appellant testified in English in response to the trial judge's questions. During the trial, appellant testified through an interpreter. The record does not reflect the absence of an interpreter to translate the testimony of adverse witnesses but rather suggests that an interpreter was present. After voir dire and immediately before the State's first witness testified, the following dialogue took place:

THE COURT: Mr. Lara, is it your wish not to request probation from the

Court in the event that you are found guilty?

APPELLANT: No.

THE COURT: You do not wish and you have refused to sign a motion for probation which would perhaps permit you to be granted probation if you were found guilty?

APPELLANT: No.

THE COURT: *Ask him* if he understands if he does not sign the motion at this time requesting probation, he will not be eligible for it if the jury finds him guilty.

APPELLANT: I have 11 months here over nothing. I lost my job. I work. How am I going to be able to complete probation?

THE COURT: I am not here to answer that. I am asking him whether he wants to apply for it and if he understands if he does not sign the motion for probation he may not be eligible for probation in the event he is found guilty. *Ask if he understands that, if he still wishes not to sign?*

APPELLANT: How many years' probation?

THE COURT: I'm not concerned—I don't know whether he's going to get probation or not get probation, but he will not get probation at all if he doesn't sign the motion. *Ask him* if he wants to sign it and if he understands that?

APPELLANT: No.

THE COURT: *He understands then?*

APPELLANT: Yes. (Emphasis added)

The record affirmatively shows that either appellant understood English or that an interpreter translated the testimony of witnesses against him:

DEFENSE ATTORNEY: Did these other persons that were with you that evening that gave you the ride, did they have a machine gun?

APPELLANT: *That's what she says.* I don't know.

\* \* \* \* \* \*

DEFENSE ATTORNEY: Once again, did you ever menace or threaten to kill anybody with or without force or try to threaten or sequester and kidnap anybody?

APPELLANT: *They can say anything they have been saying.* I have not threatened to kill them. (Emphasis added)

The record indicates the presence of an interpreter during the testimony of adverse witnesses:

PROSECUTOR: And you heard Steven White testify and Katrina Mayfield and you say they're both lying, is that right?

APPELLANT: I didn't hear testimony from no one else. I don't know.

PROSECUTOR: Was the interpreter translating for you when Katrina Mayfield testified?

APPELLANT: [Nonresponsive answer]

*Baltierra v. State,* 586 S.W.2d 553 (Tex. Cr.App.1979), cited by appellant, is distinguishable. In *Baltierra,* the court interpreter informed the trial judge, during the arraignment, that the defendant neither spoke nor understood the English language. At trial, the defendant testified through an interpreter. The record, however, was silent with respect to whether the interpreter translated the testimony of adverse witnesses for the defendant and whether the defendant understood any of such testimony. Perceiving unassigned fundamental error, the Court held that the defendant was denied her constitutional right to confrontation which she did not knowingly and intelligently waive. In the instant case, this record illustrates that an interpreter was present and that appellant understood the testimony of the State's witnesses. Appellant was not denied his constitutional right of confrontation. This point is overruled.

■ Appellant contends that the trial court erred in failing to administer an oath to the interpreter, if any, to make a true translation as required by TEX.R.CRIM. EVID. 604. We disagree. Any error from failure to swear a witness is waived if both parties are present. *Beck v. State,* 719

S.W.2d 205 (Tex.Cr.App.1986). This point of error is overruled.

The judgment of the trial court is affirmed.