**Darren Wayne MORRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00301–CR.

Court of Appeals of Texas, El Paso.

April 13, 1995.

Randy Martin, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for State.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Darren Wayne Morris, Appellant, pled guilty to driving while intoxicated.  Pursuant

to a plea bargain, the trial court assessed his punishment at two years' confinement in the county jail, probated for two years and a $500 fine. Appellant appeals from the trial court's denial of a motion to suppress. TEX. R.APP.P. 40(b)(1). We affirm.

## I. VIOLATION OF *MIRANDA* AND ARTICLE 38.22

In his first point of error, Appellant contends that the trial court erred in denying his motion to suppress the first nine minutes of the audio portion of a videotaped field sobriety test. Relying upon *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 38.22 of the Texas Code of Criminal Procedure, he argues that this portion of the tape should have been suppressed because the officer conducted custodial interrogation prior to advising Appellant of his *Miranda* rights. After reviewing the videotape, the trial court found that the officer's discussions with Appellant did not amount to custodial interrogation, and denied Appellant's motion.

### Factual Summary

No testimony was offered by the State or Appellant at the suppression hearing. Appellant offered into evidence only the videotape, which we have reviewed in its entirety. Trooper Campbell began the process by reading Appellant the DWI statutory warning. *See* TEX.REV.CIV.STAT.ANN. art. 6701l–5, § 2 (Vernon Supp.1995). When asked, Appellant said he did not understand the statutory warning. At first, Appellant would not indicate what part of the warning he did not understand, so Campbell allowed Appellant to read it to himself. Finally, Appellant stated he did not understand any of it. After Campbell explained the entire warning again, Appellant persisted that he did not understand it. In a loud and argumentative manner, he asked Trooper Campbell several times "are you talking about the one out on the road or the one here?",[1] and he continuously interrupted Campbell's attempts to answer. Obviously irritated, Campbell finally

asked Appellant how many times he had to repeat himself and whether Appellant was "too intoxicated to understand" him. Appellant said that he was not drunk and Campbell quickly replied that he should not have to repeat himself anymore. Appellant then listened to Campbell tell him that the warning applied to the breath test in the jail. He refused to take the breath test or sign the form indicating his refusal. Campbell then read Appellant his *Miranda* rights and Appellant indicated that he understood them. Campbell next requested that he perform certain sobriety tests. After first indicating that he would cooperate, Appellant refused to perform the tests that Campbell had showed him. Asking Appellant whether he recalled the rights that had been read to him earlier, Campbell asked Appellant if he were willing to answer some questions. Appellant said that he did not remember any of the rights because his "memory sucks." Campbell again read the *Miranda* rights aloud and asked Appellant whether he understood those rights. Appellant then announced that he now understood his rights, particularly his right to terminate the interview. He did just that, whereupon the videotape concluded.

### Standard of Review

The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Musick v. State,* 862 S.W.2d 794, 798 (Tex.App.—El Paso 1993, pet. ref'd); *Vargas v. State,* 852 S.W.2d 43, 44 (Tex.App.—El Paso 1993, no pet.). As a reviewing court, we do not perform our own factual review, but simply decide whether the trial court's findings are supported by the record; if so, we do not disturb the trial court's factual determinations, but we do address the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Musick,* 862 S.W.2d at 798; *Vargas,* 852 S.W.2d at 44. If the trial court's decision is correct on any theory of law applicable to the case, we must sustain it. *Romero,* 800

---

1.  It is not entirely clear from the tape, but Appellant seems to be referring to a roadside breath test.

S.W.2d at 543; *Musick,* 862 S.W.2d at 798; *Vargas,* 852 S.W.2d at 44. This principle holds true even when the trial court gives the wrong reason for its decision, and it is especially true with regard to the admission of evidence. *Romero,* 800 S.W.2d at 543; *Musick,* 862 S.W.2d at 798; *Vargas,* 852 S.W.2d at 44.

### Miranda

■■■■ The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612; *Alvarado v. State,* 853 S.W.2d 17, 20 (Tex.Crim.App.1993). In order for the *Miranda* safeguards to apply, there must be two showings: (1) the suspect must have been "in custody," and (2) the police must have "interrogated" the suspect either by express questioning or its functional equivalent. *Little v. State,* 853 S.W.2d 179, 183 (Tex.App.—Corpus Christi 1993, no pet.); *see Rhode Island v. Innis,* 446 U.S. 291, 300–302, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *Jones v. State,* 795 S.W.2d 171, 174 (Tex.Crim.App.1990).

### Article 38.22

■■■■ Article 38.22 generally precludes the use of statements which result from custodial interrogation absent compliance with its procedural safeguards. Tex.Code Crim.Proc. Ann. art. 38.22, § 2 (Vernon 1979); *Galloway v. State,* 778 S.W.2d 110, 112 (Tex.App.—Houston [14th Dist.] 1989, no pet.); *see Shiflet v. State,* 732 S.W.2d 622 (Tex.Crim.App. 1985). However, Article 38.22, § 5 specifically exempts statements which do not "stem from custodial interrogation," statements which are "res gestae of the arrest or the offense," and all voluntary statements, whether or not they result from custodial interrogation. Tex.Code Crim.Proc.Ann. art. 38.22, § 2; *Shiflet,* 732 S.W.2d at 623; *Galloway,* 778 S.W.2d at 112. Thus, if Appellant's statements do not stem from custodial interrogation, neither *Miranda* nor Article 38.22

require their suppression. *Galloway,* 778 S.W.2d at 112.

### Interrogation

■■■■ "Interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis,* 446 U.S. at 300–301, 100 S.Ct. at 1689–90; *Jones,* 795 S.W.2d at 174. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. *See Rhode Island v. Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90; *Jones,* 795 S.W.2d at 174. Not all post-arrest police questioning can be classified as "interrogation." *Id.,* 795 S.W.2d at 174. Questioning normally attendant to arrest and custody is not interrogation. *Rhode Island v. Innis,* 446 U.S. at 300–302, 100 S.Ct. at 1689–90; *McCambridge v. State,* 712 S.W.2d 499, 505 (Tex.Crim.App.1986); *see Jones,* 795 S.W.2d at 174 and n. 3. Police requests that suspects perform sobriety tests and directions on how suspects are to do the tests do not constitute interrogation; neither do queries concerning a suspect's understanding of his rights. *Jones,* 795 S.W.2d at 176. Likewise, asking a suspect in custody whether he will take a blood alcohol test or repeatedly asking a suspect to give a breath sample are not "interrogations." *Jones,* 795 S.W.2d at 174 n. 3. If the police limit themselves to these sorts of questions, they are not interrogating a DWI suspect. *Id.,* 795 S.W.2d at 176; *see Rhode Island v. Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–90; *McCambridge,* 712 S.W.2d at 505. Applying the above rules to DWI videotapes, the Court of Criminal Appeals has held that audio tracks from those tapes should not be suppressed unless the police conduct depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody or is conduct the police should know is reasonably likely to elicit such a response. *Jones,* 795 S.W.2d at 176.

■■■■ There is no question that Appellant was in custody in the instant case. The only issue is whether the trooper interroga-

ted Appellant within the meaning of *Miranda* and Article 38.22. Trooper Campbell's reading of the statutory warning and his request that Appellant provide a sample of his breath or blood did not constitute custodial interrogation. *See Jones*, 795 S.W.2d at 176; *McCambridge*, 712 S.W.2d at 506. Likewise, Campbell's questions seeking to learn whether Appellant understood the statutory warning and his various rights were not custodial interrogation. *See Jones*, 795 S.W.2d at 176. The issue of whether Campbell's question, "are you too intoxicated to understand me?" qualifies as interrogation is more troublesome. When considered in a vacuum, the question could be seen as one designed to or reasonably likely to elicit an incriminating response. However, when considered in the context of the interaction between Appellant and Campbell, the question appears to be nothing more than a sarcastic and challenging remark designed to get Appellant's attention and cause him to stop arguing with Campbell so that they could proceed. Our conclusion is buttressed by the fact that Campbell did not pursue the question, but instead, seemed satisfied with Appellant's answer. With regard to Appellant's perception of the question, he did not testify at the suppression hearing. Consequently, we are limited to what appears on the videotape in determining Appellant's perception. It appears that the question had its desired effect because Appellant quit interrupting Campbell, listened to his answer, and made a decision with regard to the breath test. The video also reflects that Appellant remained insistent that he was not intoxicated. In light of these facts, the trial court could have reasonably concluded that the question was not designed to or reasonably likely to elicit an incriminating response. Consequently, the trial court did not abuse its discretion in refusing to suppress the audio portion of the tape. Point of Error No. One is overruled.

## II. INVOCATION OF FIFTH AMENDMENT RIGHTS

In Point of Error No. Two, Appellant complains that the trial court erred in ruling that it would suppress the audio portion of the tape only at the point where Appellant invoked his right to terminate the interview.

Citing *Hardie v. State*, 807 S.W.2d 319 (Tex. Crim.App.1991) and *Dumas v. State*, 812 S.W.2d 611 (Tex.App.—Dallas 1991, pet. ref'd), he argues that the trial court should have suppressed the tape at the point where Trooper Campbell first read Appellant his *Miranda* rights because the jury could infer from the subsequent sequence of events that Appellant had exercised his constitutional right to silence. The trial court found that Appellant did not invoke his right to remain silent when his rights were first read to him, or thereafter. Instead, the court found that he terminated the interview at the conclusion of the tape. The court ruled that it would not "be incline[d] to suppress the tape prior to the time that he says, 'I wish to terminate this interview.'" After asking the parties whether they had anything further, the court then denied the motion to suppress.

■ It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App.1991); *Dumas*, 812 S.W.2d at 614. The prosecution may not, therefore, use at trial the fact that a suspect stood silent or claimed his privilege in the face of an accusation. *Id.* To permit use of this evidence for purposes of incrimination would erode the protection guaranteed by both state and federal constitutions. *See Dumas*, 812 S.W.2d at 614; *Gathright v. State*, 698 S.W.2d 260, 261 (Tex.App.—Fort Worth 1985, no pet.).

In *Dumas*, the DWI videotape reflected that after the officer read the defendant his rights, the defendant refused to waive those rights and answer the officer's questions. The trial court suppressed the defendant's invocation of his rights, but permitted the jury to hear the officer read the defendant his rights and ask whether he would waive them. The Dallas Court of Appeals concluded that the State's action in deleting the audio after the interrogating officer gave *Miranda* warnings and asked the defendant whether he would waive his rights led the jury to the inescapable conclusion that the defendant exercised his constitutional privilege to remain silent. *Dumas*, 812 S.W.2d at 614.

*Dumas* does not require us to reach the result sought by Appellant, namely, holding that the videotape should have been suppressed at the point where Campbell first read the *Miranda* warnings to Appellant. We find the instant case distinguishable in two important respects. First, Campbell did not, immediately after reading Appellant his rights, ask him whether he would waive those rights and answer some questions. Instead, Campbell asked Appellant only whether he understood his rights. He then proceeded to demonstrate some sobriety tests and asked Appellant if he would perform them. Those sobriety tests are non-testimonial, and therefore, did not implicate Appellant's Fifth Amendment rights. *See Jones,* 795 S.W.2d at 175. Second, Appellant, unlike Dumas, did not immediately invoke his rights after they were explained to him the first time. He also did not exercise those rights when Campbell asked Appellant if he would answer some questions. Appellant said only that he did not remember the rights. Thus, it was permissible for the jury to hear the tape's audio track up until this point because its subsequent deletion would not have led the jury to inescapably conclude that Appellant exercised those rights which he could not remember. We find no merit in Appellant's argument that the trial court erred by not suppressing the tape when Campbell first read the *Miranda* warnings to Appellant.[2]

Consequently, the trial court did not abuse its discretion in denying Appellant's motion to suppress. Point of Error No. Two is overruled.

## CONCLUSION

Having overruled Points of Error Nos. One and Two, the judgment of the trial court is affirmed.

---

**2.** Arguably, the audio became inadmissible when Campbell read Appellant his rights the second time since the jury could have inferred from the immediate deletion of the audio that Appellant had invoked his rights. Had Appellant argued in the trial court and on appeal that the audio portion of the tape should be suppressed at the point where his rights were read a second time, we perhaps would reach a different result. However, that issue is not before us and we decline to address it.