COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 VICTOR BUSTOS,
  
                             Appellant,
  
 v.
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-00-00518-CR
  
 Appeal from the
  
 34th Impact District Court
  
 of El Paso County, Texas 
  
 (TC# 20000D01991) 
  
 
 


O P I N I O N

 

Victor Bustos appeals from his
conviction for possession of a controlled substance, heroin, following a jury
trial.  We affirm.

Facts








On December 6, 1999, members of the
El Paso police department executed a search warrant at 237 Lolita in El
Paso.  Prior to obtaining the warrant,
Detectives Cesar Diaz and John Macias had surveilled the residence several
hours a day beginning on November 29. 
During that time, they observed a number of persons, known to the
detectives to be heroin users in the neighborhood, approach the house.  While
at the residence, the persons would exchange items with either the defendant or
his brother which, from forty yards away, appeared to be a street-level
narcotics transaction.  Each time the
individuals would immediately leave after the exchange.  At least eight times, the detectives observed
that the defendant Victor Bustos or his brother would walk to an area behind
the house that contained trash cans. 
Each time the men would stay in this area only a few seconds.  The area that held the trash cans could be
entered through two gates from 237 Lolita, but could not be accessed from the
house next door.  The detectives did not
actually see anyone lift the trash cans, because the trash cans were not within
their line of sight from the surveillance point.  On December 3, the detectives acquired a
warrant to search 237 Lolita.  The search
took place on the following Monday, December 6.

On that Monday morning, Victor Bustos
left the residence at around 8:30 a.m. to pay the water bill with his father,
returning at 10:30 a.m., just before the detectives arrived for that morning=s surveillance.  About an hour later, while conducting
preliminary surveillance, Detective Diaz saw Victor get into a vehicle and
drive away from the house.  The detective
then had a marked patrol unit stop Victor=s vehicle and arrest him for
outstanding traffic warrants.  When
Officer Ruben Trejo, the patrolman that stopped Bustos=s vehicle, pulled the car over, he
found a plastic bag containing 4.18 grams of marijuana.  Victor was arrested, served with a search
warrant of 237 Lolita, placed in the back of the police car, and driven back to
237 Lolita.  The police did not read
Bustos his Miranda warnings.








The police cruiser was parked in
front of the driveway at 237 Lolita while the police searched the
premises.  Victor sat in the back
seat.  The officers searched the house
and the immediate lot upon which the house sat, finding nothing inside.  Adjacent to that lot was another parcel,
accessible from 237 Lolita by two gates. 
It is not clear whether this lot is part of 237 Lolita or owned by the
Bustos family.  When the officers started
to search this area, Victor began Agoing kind of nuts and yelling@ at them from inside the car.  When Detective Diaz approached the car,
Victor immediately began to yell that they were searching the neighbor=s house and that they had no
authority to do that.  After Officer Diaz
spoke with Victor=s father, and attempted to speak with someone at the neighbor=s house, he concluded that the
connected plot was part of 237 Lolita. 
Officer Diaz=s testimony continues that he then approached Victor, still
in the back of the cruiser, and said, AI don=t know what your problem is.  This appears to be your yard.@ 
To which Victor responded, according to Officer Diaz, AOkay. 
That might be our yard--that is our yard, but if you find any shit by
the trash can, it=s not mine.@

Ultimately, twenty-two foil-wrapped
bindles of heroin were found in a little Jack Daniels bottle under the trash
can in the lot connected to 237 Lolita. 
Each bindle contained a small amount of heroin with a street value of
about $10.  The total weight of the
heroin, including adulterants and dilutants, was 1.23 grams.








This appeal is from the second trial
for this offense.  The first trial
(August 8-9, 2000) ended in a mistrial when the first State=s witness, lab supervisor John Rudd
of the Texas Department of Public Safety in El Paso, testified on the State=s direct examination to evidence of
marijuana possession.  This was offered
by the prosecution as an explanation of why Victor was being held in the back
of the police cruiser throughout the search. 
The prosecutor argued that the marijuana, even if an extraneous offense,
met the exception for same transaction offenses.   Further, she argued that even if
inappropriate, an instruction would be sufficient to correct the error.  The trial court found this comment to be error
which an instruction to disregard could not correct.  When defense counsel requested an instruction
to disregard, the trial judge offered to accept a motion for a mistrial.  Defense counsel then moved for a
mistrial.  The jury was excused for the
rest of the day.  The next morning the
judge granted a mistrial.  A new trial
was held November 14 and 15 of that year. 
Appellant Victor Bustos brings five issues on appeal in his petition to
this Court of Appeals.

A. 
The evidence presented at trial was sufficient as a matter of law to
support the judgment of guilt.








Appellant Bustos claims first that
the evidence presented at trial was insufficient as a matter of law to support
the judgment of guilt.  Appellant was
convicted of unlawful possession of a controlled substance, namely heroin,
having an Aaggregate weight, including
adulterants or dilutants, [of] one gram or more but less than four grams.@ 
Tex. Health & Safety Code
Ann. ' 481.115 (Vernon Supp. 2003) (The
quoted statute was enacted in 1994 and has not been modified by the
legislature; thus, it is the same statute that was in effect when Victor Bustos
was tried).

In reviewing the legal sufficiency of
the evidence to support a criminal conviction, an appellate court must review
the evidence in a light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789 (1979); Geesa v.
State, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), overruled on other
grounds, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000); Levario
v. State, 964 S.W.2d 290, 293-94 (Tex. App.--El Paso 1997, no pet.).  This Court should not resolve any conflict of
fact or assign credibility to the witnesses, as this is within the exclusive
province of the finder of fact to do so. 
Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Lucero
v. State, 915 S.W.2d 612, 614 (Tex. App.--El Paso 1996, pet. ref=d). 
This Court should instead determine only if the explicit and implicit
findings of the jury are rational when the evidence admitted at trial is viewed
in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 421-22. 
In doing so, we resolve any inconsistencies in the evidence in favor
of the verdict.  Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Menchaca v. State, 901
S.W.2d 640, 651 (Tex. App.--El Paso 1995, pet. ref=d).








Where an accused is charged with
unlawful possession of a controlled substance, the State must prove that:  (1) the accused exercised care, control and
management over the contraband, and (2) the accused knew the substance was
contraband.  Martin v. State, 753
S.W.2d 384, 386 (Tex. Crim. App. 1988) (citing Nunn v. State, 640 S.W.2d
304 (Tex. Crim. App. 1982)).  Appellant=s argument is directed at the first
prong of this analysis.  The evidence
must affirmatively link the accused to the contraband by a showing which
indicates the accused=s knowledge and control of the contraband.  Waldon v. State, 579 S.W.2d 499,
501 (Tex. Crim. App. 1979).  What
constitutes an Aaffirmative link@ has no peculiar methodology typical
of a legal rule; rather, it is Aonly a shorthand expression of what must be proven to
establish that a person possessed some kind of drug >knowingly or intentionally.=@ Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995).  Where
the accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that the accused had knowledge of and control over
the contraband unless there are additional independent facts and circumstances
which connect the accused to the contraband. 
Menchaca, 901 S.W.2d at 651.








In determining if sufficient
connection between the defendant and the contraband exists, a reviewing court
can examine such circumstantial factors as the amount of contraband found, its
location in relationship to the defendant=s personal belongings, the defendant=s relationship to other persons with
access to the premises, incriminating statements, and proximity of the
defendant to the contraband.  Villegas
v. State, 871 S.W.2d 894, 896 (Tex. App.--Houston [1st Dist.] 1994, pet.
ref=d) (citing Frierson v. State,
839 S.W.2d 841, 849 (Tex. App.--Dallas 1992, pet. ref=d)). 
Other factors to consider include whether the accused was at the place
searched at the time of the search, whether there were other persons present at
the time of the search, whether the contraband found was large enough to
indicate the accused knew of its existence, and whether there is evidence that
the defendant occupied the premises.  Id.
at 896-97 (citing Classe v. State, 840 S.W.2d 10, 12 (Tex. App.--Houston
[1st Dist.] 1992, pet. ref=d)).  Further, whether
the defendant owned, rented, or controlled the place where the police found the
contraband must be considered, as well as whether the defendant had convenient
access to the contraband and whether the contraband was found in plain view or
in areas private to the accused.  Id.
at 897 (citing Edwards v. State, 813 S.W.2d 572, 575 (Tex. App.--Dallas
1991, pet. ref=d)). 
Whether the defendant possessed other contraband when arrested and
incriminating statements made by the defendant when arrested can also be
considered by the trier of fact in determining if the found contraband is
possessed by the defendant.  Jones v.
State, 963 S.W.2d 826, 830 (Tex. App.--Texarkana 1998, pet. ref=d). 
Tips from an informant that the accused was in possession of contraband
can also be used.  Washington v. State,
902 S.W.2d 649, 652 (Tex. App.--Houston [14th Dist.] 1995, pet. ref=d). 
Notwithstanding the previous laundry list of possible links, there is no
set formula of facts that necessitate a finding of an affirmative link sufficient
to support an inference of knowing possession. 
Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.--Houston [14th
Dist.] 2001, pet. ref=d).








The evidence in this case shows that
the heroin found was found in an area that was, if not part of 237 Lolita, then
immediately adjacent to and accessible from 237 Lolita.  When found, the heroin was packaged in a
manner consistent with street-level sales. 
This condition of the material is consistent with activity by the
defendant as observed by the surveillance team, and confirmed their suspicion
that the short transactions between the defendant and those that visited the
residence were, in fact, heroin sales. 
Surveillance linked Bustos to the area. 
The phone bill for the residence was in his name, further connecting him
to the place.  Although the appellant was
apprehended about a mile from the private residence, he was there immediately
prior to his arrest, and he had been observed at the residence often throughout
the previous week.  Further, Bustos=s demeanor while in the squad car and
his comments to Detective Diaz point to his knowledge of the existence and
location of the heroin.  All of this
confirmed a confidential tip received by the police on November 29, 1999.  In light of this evidence, this Court cannot
hold that the explicit and implicit findings of the jury are irrational when
the evidence admitted at trial is viewed in a light most favorable to the
verdict.  Accordingly, we must conclude
that there was sufficient evidence as a matter of law to support the finding of
guilt.  This portion of appellant=s first issue is overruled.








Under this issue, appellant further
claims that there was insufficient evidence that the weight of heroin was over
one gram or that the evidence was that the weight over one gram was
attributable to adulterants or dilutants. 
In light of the language of section 481.115
of the Health and Safety Code, the language of the indictment, and the
definition of Aadulterants and dilutants,@ this argument attempts to assign a
burden to the prosecution that the law does not.  The statute under which the appellant was
convicted speaks in terms of adulterants and dilutants, making the offense
possession of a controlled substance with an Aaggregate weight, including
adulterants or dilutants, [of] one gram or more but less than four grams.@ 
Tex. Health & Safety Code
Ann. ' 481.115 (Vernon Supp. 2003).  This language was precisely that used in the
indictment.  The definition of Aadulterant or dilutant@ is broadly defined in the statute as
Aany material that increases the bulk
or quantity of a controlled substance, regardless of its effect on the chemical
activity of the controlled substance.@ 
Tex. Health & Safety Code
Ann. ' 481.002(49) (Vernon Supp.
2003).  This definition has been effective
since September 1, 1994.  Williams v.
State, 936 S.W.2d 399, 405 (Tex. App.--Fort Worth 1996, pet. ref=d). 
The legislature has also clearly defined the term Acontrolled substance@ such that it Aincludes the aggregate weight of any
mixture, solution, or other substance containing a controlled substance.@ 
Tex. Health & Safety Code
Ann. ' 481.002(5) (Vernon Supp. 2003).

Here, the State provided evidence
that the substance found under the trash cans contained heroin and weighed,
when all the bindles were considered together, without packaging, 1.23
grams.  William Todsen, a criminalist
with the Texas Department of Public Safety, testified that another chemist, Ms.
Falknor, had performed tests on the substance and concluded it contained
heroin.  He also explained that the tests
did not isolate the heroin itself or the cutting agents.








When viewed in the light most
favorable to the verdict, Mr. Todsen=s testimony and the exhibits admitted
into evidence are sufficient for us to conclude that a rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Geesa, 820 S.W.2d at
159.  In particular, the evidence was
legally sufficient to allow the jury to conclude that the substance delivered
was heroin, in the amount, including adulterants and dilutants, of at least one
gram but less than four grams.  Tex. Health & Safety Code Ann. '' 481.002(5), (49), 481.115 (Vernon
Supp. 2003).   Bustos=s first issue is overruled.

B. 
The trial court did not err in allowing the oral statements of the
appellant into evidence.

In his second issue, appellant
objects to the admission of oral statements attributable to appellant while he
was in custody.  Specifically, the
statement made by appellant while in the police squad car:  AOkay. 
That might be our yard--that is our yard, but if you find any shit by
the trash can, it=s not mine.@  We conclude that the
admissibility of this statement depends upon whether it was in response to
custodial interrogation.








A trial court=s ruling on the admissibility of
evidence is reviewed for abuse of discretion. 
Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  The test for an abuse of discretion is not
whether, in our view, the facts present an appropriate case for the trial court=s action.  Instead, the Court of Appeals determines
whether the court acted without reference to any guiding rules and
principles.  Coots v. Leonard, 959
S.W.2d 299, 301 (Tex. App.--El Paso 1997, no pet.) (citing Craddock v.
Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939)).

Miranda and article 38.22 of the Texas Code
of Criminal Procedure govern when statements by the defendant may be used at
trial apply only to statements made as a result of custodial
interrogation.  Rodriguez v. State,
939 S.W.2d 211, 215 (Tex. App.--Austin 1997, no pet.); Morris v. State,
897 S.W.2d 528, 531 (Tex. App.--El Paso 1995, no pet.).  If appellant=s statements do not stem from
custodial interrogation, neither Miranda nor article 38.22 requires
their suppression.  Morris, 897
S.W.2d at 531.  Custodial interrogation
requires (1) that the suspect must have been Ain custody,@ and (2) the police must have Ainterrogated@ the suspect either by express
questioning or its functional equivalent. 
Morris, 897 S.W.2d at 531; See Rhode Island v. Innis, 446
U.S. 291, 300-01, 100 S.Ct. 1682, 1689 (1980). 
A person is in Acustody@ only if, under the circumstances, a reasonable person would
believe Athat his freedom of movement was
restrained to the degree associated with a formal arrest.@ 
Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)
(citing Stansbury v. California, 511 U.S. 318, C, 114 S.Ct. 1526, 1528-30 (1994)); see
also Rodriguez, 939 S.W.2d at 216. 
Here, the State does not contest that appellant was in custody at the
time of the utterance in question; rather, the debate revolves around whether a
statement by Detective Diaz to appellant was interrogation eliciting the
response from appellant or whether the statement was voluntary.








AInterrogation@ for the purposes of Miranda
and article 38.22 refers not only to express questioning, but also to any words
or actions on the part of the police that the police should know are reasonably
likely to elicit an incriminating response from the subject.  Innis, 446 U.S. at 300-02, 100 S.Ct.
at 1689-90; Jones v. State, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990); Morris,
897 S.W.2d at 531.  The latter part of
this definition focuses on the subjective perception of the suspect rather than
the intent of the questioning officer.  Innis,
446 U.S. at 301, 100 S.Ct. at 1690.  Miranda
did not hold that all statements obtained by police after a person is in
custody should be considered the product of interrogation.  Innis, 446 U.S. at 299, 100 S.Ct. at
1689.  AAny statement given freely and
voluntarily without any compelling influence is, of course, admissible in
evidence.  The fundamental import of
the privilege while an individual is in custody is not whether he is allowed to
talk to the police without the benefit of warnings and counsel, but whether he
can be interrogated. . . . Volunteered statements of any kind are not
barred by the Fifth Amendment . . . .@ 
Id. at 299-300, 100 S.Ct. at 1689 (citing Miranda v. Arizona,
384 U.S. 436, 478, 86 S.Ct. 1602, 1630 (1966)) (emphasis added by the Court in Innis).  Likewise, the drafters of article 38.22
specifically exempted statements which do not Astem from custodial interrogation,@ statements which are Ares gestae of the arrest or the
offense,@ and all voluntary statements,
whether or not they result from custodial interrogation.  Tex.
Code Crim. Proc. Ann. art. 38.22, ' 5; Morris, 897 S.W.2d at 531.








During the search of the area near
the trash cans, the appellant began Agoing kind of nuts and yelling@ at the officers.  When Detective Diaz approached the car,
Victor immediately began to yell that they were searching the neighbor=s house and that they had no
authority to do that.  After Officer Diaz
spoke with Victor=s father, and attempted to speak with someone at the neighbor=s house, he concluded that the
connected plot was part of 237 Lolita. 
Officer Diaz=s testimony continues that he then approached Victor, still
in the back of the cruiser and said, AI don=t know what your problem is.  This appears to be your yard.@ 
To which Victor responded, according to Officer Diaz, AOkay. 
That might be our yard--that is our yard, but if you find any shit by
the trash can, it=s not mine.@








Officer Diaz=s statement does not seem to have
been intended to elicit any response from Bustos.  The trial court could have reasonably
concluded that the question was not designed to or reasonably likely to elicit
the incriminating response.  A statement
by a defendant that is beyond the scope of the inquiry of the officer is not
responsive, and thus not subject to the restrictions and protections of Miranda
and article 38.22.  See Etheridge v.
State, 903 S.W.2d 1, 15-16 (Tex. Crim. App. 1994); Beasley v. State,
683 S.W.2d 132, 134 (Tex. App.--Eastland 1984, pet. ref=d) (citing DeHart v. State,
468 S.W.2d 435 (Tex. Crim. App. 1971)). 
To hold otherwise would open huge gaps in the law when an officer asked
a seemingly benign question like AHow are you?@ or a carefully worded question to
avoid improper inquiries.  Consequently,
the trial court did not abuse its discretion in allowing the statement into evidence.  Appellant=s second issue is overruled.

C. 
The trial court did not err in denying appellant=s motion to dismiss.

Appellant=s third issue claims that his
conviction is barred by double jeopardy. 
The appeal before this Court is from the defendant=s second trial for the charge of
possession of heroin.  The trial court
declared a mistrial during the first trial after the prosecutor introduced
evidence of Bustos=s possession of marijuana from the State=s first witness, a forensic
scientist.  The trial judge opined that
an instruction to disregard would be insufficient to cure the error.  Citing Bauder v. State, 921 S.W.2d 696
(Tex. Crim. App. 1996) (Bauder I), appellant moved to dismiss the second
trial based upon double jeopardy, which the trial court denied.








Whether comments by a prosecutor or
elicited by a prosecutor are such that they could not have been cured by an
instruction to disregard, and whether the prosecutor acted with reckless
disregard of the error in presenting the comments to the jury, is generally a
fact question.  Id. at 700; State
v. Lee, 15 S.W.3d 921, 926 (Tex. Crim. App. 2000).  We therefore review the trial court=s rejection of a claim of double
jeopardy under an abuse of discretion standard. 
Vasquez v. State, 22 S.W.3d 28, 31 (Tex. App.--Amarillo 2000, no
pet.).  However, in an inquiry into mixed
questions of law and fact that do not rely upon the credibility or demeanor of
a witness, the court of appeals need not give deference to the trial court=s ruling.  Lee, 15 S.W.3d at 926; Guzman v.
State, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997).  Here, we are only considering whether the
facts of the present case reveal misconduct by the prosecutor, specifically
intentionally causing or recklessly disregarding the risk of a mistrial;
therefore, the decision by the trial court to go forth with the second trial is
reviewed under an abuse of discretion standard.

Generally, when a mistrial is
declared in a criminal prosecution at the request of the defendant, the State
is not barred from retrying the defendant because the defendant=s motion for mistrial is considered A>a deliberate election on his part to
forego his valued right to have his guilt or innocence determined before the
first trier of fact.=@ 
Bauder I, 921 S.W.2d at 698 (quoting United States v. Scott,
437 U.S. 82, 93, 98 S.Ct. 2187, 2195 (1978)). 
However, the Texas Court of Criminal Appeals adds to Texas
jurisprudence,

But we
believe that the right to a trial before the jury first selected is the right to
a fair trial before that jury.  And
although our system does not guarantee the right to a trial free of errors and
mistakes, we think it clear that, when a prosecutor=s deliberate or reckless conduct renders trial before
the jury unfair to such a degree that no judicial admonishment can cure it, an
ensuing motion for mistrial by the defendant cannot fairly be described as the
result of his free election.

 

Id.  Thus, if the questionable conduct was
deliberate or reckless, the prosecutor is seen as goading the defendant
into foregoing his right to the fair judgment of the first trier of fact
selected.  Id. at 698-99; Tex. Const. art. I, ' 14. 
This rule is invoked only where the mistrial is unavoidable, a very
unusual circumstance given the presumption that curative instructions are
effective in removing questionable argument and evidence from the consideration
of the jury.  Id. at 699-700.








The prosecutor commits an intentional
or reckless act where:  (1) the act was
intended to induce a motion for mistrial; (2) the prosecutor believed that
proffering the objectionable evidence would materially improve chances of
getting a conviction otherwise unobtainable, despite the incurable effect of
such evidence even with a judicial admonishment; or (3) the prosecutor must
have been aware of but consciously disregarded the risk that an objectionable
event for which he or she was responsible would require a mistrial, is
reasonably certain to result in a mistrial, or creates a risk that mistrial is
reasonably certain.  Lee, 15
S.W.3d at 925 (citing Bauder I, 921 S.W.2d at 699; Ex parte Bauder,
974 S.W.2d 729, 732 (Tex. Crim. App. 1998) (Bauder II)).  The critical question to be asked in
determining if the action of the prosecutor was such that Bauder I would
bar a second trial is whether Athe appellant=s motion for mistrial was a choice he made in response to ordinary
reversible error in order to avoid conviction, appeal, reversal, and
retrial.  Or, on the other hand, was he
required to move for mistrial because the prosecutor deliberately or recklessly
crossed >the line between legitimate
adversarial gamesmanship and manifestly improper methods=. . . that rendered trial before the
jury unfair to such a degree that no judicial admonishment could have cured it?@ 
Id. at 923 (citing Bauder II, 974 S.W.2d at 732).








A mistrial is an extreme remedy for
prejudicial events occurring during trial. 
Bauder I, 921 S.W.2d at 698. 
Violations of evidentiary rules are generally curable with an
instruction to disregard.  Lee, 15
S.W.3d at 926 (citing Waldo v. State, 746 S.W.2d 750, 752 (Tex. Crim.
App. 1988)).  Only when it is clear that
the objectionable event is so emotionally inflammatory that curative
instructions are not likely to prevent the jury from being unfairly prejudiced
against defendant should a mistrial be granted. 
Bauder I, 921 S.W.2d at 698 (citing Kemp v. State, 846
S.W.2d 289, 308 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 918, 113
S.Ct. 2361).

The Court of Appeal in Texarkana was
recently confronted with a situation very similar to the one here.  Barnett v. State, 83 S.W.3d 810 (Tex.
App.--Texarkana 2002, no pet.).  There,
the defendant was indicted for possession of marijuana.  Id. at 812.  During the arrest, the arresting officer also
found illicit mushrooms.  Id.  During trial, after repeated warnings from
the judge not to mention the mushrooms, the prosecutor offered the mushrooms
into evidence.  Id. at 813.  A mistrial was declared.  Id. 
In a second trial, the defendant was convicted of possession of
marijuana.  Id. at 812.  On appeal, the defendant made a claim that Bauder
I barred the second trial.  Id.  The Court of Appeals disagreed and affirmed
the judgment of the trial court.  Id.
at 815.  The prosecutor in that case
claimed to have mistakenly grabbed the wrong piece of evidence and the
testifying officer properly answered what the item was.  Id. 
Citing the prosecutor=s lack of experience, both the trial judge and the defense
counsel agreed that the prosecutor=s actions were neither deliberate nor
reckless, but at most negligent.  Id.








Common to both Bauder II and Barnett
is the reviewing court=s consideration of discussion held out of the presence of the
jury, to determine whether the prosecutor acted with conscious disregard of a
mistrial.  Barnett, 83 S.W.3d at
815.  This discussion between the parties
and the court in the present case reveals a lack of intentional or reckless
behavior on the part of the prosecutor. 
The prosecutor in this case insisted that the marijuana evidence was
necessary to explain why appellant was in the back of the police car while the
police searched the residence.  Further,
she justified its admissibility based on the fact that the traffic stop, the
marijuana seizure, and the search of the residence that yielded the heroin were
all part of the same transaction.  When
the trial judge continued to insist that even mentioning the marijuana was Agrossly inappropriate,@ 
the prosecutor continued to disagree with the judge but agreed to drop
the subject.   Clearly, unless the
prosecutor was slyly performing to cover her intentions, she did not see the
potential for a mistrial even after the judge explained his concerns.  She insisted several times that an instruction
to disregard was sufficient.  Even the
defense attorney kept his request to the court to a motion for an instruction
to disregard until the judge prompted a request for a mistrial.  Given these facts, we cannot say that the
prosecutor=s actions were deliberate or reckless
acts leading to a mistrial; at most they were negligent.  Therefore we find that under the Bauder
standard regarding double jeopardy, appellant Bustos=s rights were not violated by the
second trial.  The third issue is
overruled.

D. 
The trial court did not err in denying appellant=s motion to suppress.








Appellant=s fourth issue claims that the trial
court erred in denying his motion to suppress evidence.  He argues, first that the search warrant
failed to provide an adequate description of the place to be searched, and
second that the warrant was stale when it was executed.

An appellate court should give almost
total deference to a trial court=s determination of historical facts
supported by the record, especially when the trial court=s fact findings are based on an
evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  The same is true for
the trial court=s rulings on mixed questions of law and fact if the
resolution of the ultimate questions involved turn on the evolution of
credibility and demeanor.  Id.  An appellate court reviews de novo
mixed questions of law and fact not falling within this category as well as
questions of pure law.  Id.  If the trial court does not file findings of
fact and conclusions of law, an appellate court presumes that the trial court
made findings necessary to support its ruling so long as those implied findings
are supported by the record.  Zarychta
v. State, 44 S.W.3d 155, 163 (Tex. App.--Houston [14th Dist.] 2001, pet.
ref=d) (citing State v. Simmang,
945 S.W.2d 219, 221-22 (Tex. App.--San Antonio 1997, no pet.)).








Under Texas law, a warrant
authorizing the search of a house also permits the search of other structures
or areas inside the curtilage, or area immediately surrounding the dwelling
place.  Davila v. State, 871
S.W.2d 806, 814 (Tex. App.--Corpus Christi 1994, pet. ref=d); see United States v. Moore,
743 F.2d 254 (5th Cir. 1984).  ACurtilage@ is a common law concept referring to
the area immediately surrounding a house to which the intimate activity of home
life extends.  Smith v. State, 722
S.W.2d 205, 208 (Tex. App.--San Antonio 1986, no pet.).

Evidence suggests that, although one
needed to proceed through a gate to get to the area in which the heroin was
found, these trash cans were used by the residents of 237 Lolita.  If, as the evidence appears to suggest, the
property that contained the trash cans under which the heroin was found was
part of 237 Lolita, then it is within the scope of the warrant describing the
residence at 237 Lolita.  If the lot is
not part of 237 Lolita, as the defense testimony appears to at times claim, or
outside of the area considered to be part of the curtilage, then appellant has
insufficient privacy interest in the place and cannot claim that the search was
unlawful as far as he is concerned.  See
Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966-67 (1969) (AFourth Amendment rights are personal
rights which . . . may not be vicariously asserted.@); Oliver v. United States, 466
U.S. 170, 176, 104 S.Ct. 1735, 1740 (1984) (citing Hester v. United States,
265 U.S. 57, 59, 44 S.Ct. 445, 446 (1924) (A>[T]he special protection accorded by
the Fourth Amendment to the people in their Apersons, houses, papers, and effects,@ is not extended to the open
fields.  The distinction between the
latter and the house is as old as the common law.=@)); Lewis v. State, 598 S.W.2d
280, 283-84 (Tex. Crim. App. 1980); Gonzalez v. State, 588 S.W.2d 355,
360 (Tex. Crim. App. 1979).








Appellant also claims that the
information was stale by the time the search was executed.  For a search warrant to be valid, the facts
relied upon in the underlying affidavit must not be stale by the time the
warrant is issued.  Morris v. State,
62 S.W.3d 817, 822 (Tex. App.--Waco 2001, no pet.); Rowell v. State, 14
S.W.3d 806, 809-10 (Tex. App.--Houston [1st Dist.] 2000), aff=d, 66 S.W.3d 279 (Tex. Crim. App. 2001).  When the activity alleged in the affidavit
for the warrant is of a continuous nature, the passage of time between the
activity and the issuance of the warrant becomes less significant.  Rowell, 14 S.W.3d at 809.  That appellant possessed heroin was suggested
by activity at 237 Lolita over the course of several days of surveillance.  The detectives began their surveillance after
receiving a tip from a confidential informant on November 29, 1999.  Over the next several days, they observed
activity that they believed was the sale of heroin.  On December 3, 1999, a search warrant was
issued.  The warrant was executed on
December 6, 1999.  AThe time allowed for the execution of
a search warrant shall be three whole days, exclusive of the day of its issuance
and of the day of its execution.@ 
Tex. Code Crim. Proc. Ann. art.
18.07 (Vernon 1977).  The search took
place within this time.  Issue Four is
overruled.

E. 
The trial court did not err in admitting the deposition testimony of
appellant=s father.








Prior to trial, appellant took the
deposition of his eighty-eight year-old father Silvestre Bustos, who was
present during the search.  Since he had
been in a traffic accident between the time of the search and the time of the
deposition, appellant moved that his competency be examined based on his poor
medical condition and that the injury made his father=s memory unreliable.  Apparently, the off-the-record discussion
resolved the matter and allowed the deposition to continue.  The interpreter was late, so the first few
minutes of testimony were interpreted by the judge upon the suggestion of
defense counsel.  At that time, there
were five people in the room that could speak Spanish, and they were invited to
correct him.  The deposition was taken to
preserve the father=s testimony in case his injuries made him unavailable to
testify.  The prosecution moved to
introduce portions of the deposition due to the father=s Abodily infirmity.@ 
Tex. Code Crim. Proc. Ann.
art. 39.12 (Vernon 1979).  In his fifth
issue, appellant complains that the interpreter at the deposition was not sworn
to provide a true and correct translation, and thus he was deprived of a fair
trial when parts of the deposition were entered into evidence.

The situation in which a deposition
of a non-English speaking witness is taken and ultimately presented before the
jury is analogous to the situation in which that witness presents his testimony
at trial, and the safeguards of article 38.30 apply.  See Leal v. State, 782 S.W.2d 844, 849
(Tex. Crim. App. 1989).  Texas Code of
Criminal Procedure article 38.30 provides that when Aa person charged or a witness does
not understand and speak the English language, an interpreter must be sworn to
interpret for him.@  Tex. Code Crim. Proc. Ann. art.
38.30(a) (Vernon Supp. 2003).  At the
time that the interpreter began, she was asked her name and then invited to
perform her duty as an interpreter.  No
oath was administered, but no objection was made by defense counsel at the
time.








At trial, a party must object to the
failure to administer an oath to the interpreter, like any witness, in order to
preserve the error.  See Beck v. State,
719 S.W.2d 205, 211-12 (Tex. Crim. App. 1986); Lara v. State, 761 S.W.2d
481, 482 (Tex. App.--Eastland 1988, no pet.). 
Appellant=s failure to object waived his right to complain on appeal of
the failure to administer the interpreter=s oath.  Appellant=s fifth issue is overruled.

Conclusion

For the foregoing reasons, the
judgment of the trial court is affirmed.

 

SUSAN
LARSEN, Justice

November 27, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)