COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CHRISTOPHER MONTES NELSON,                )

                                                                              )              
No.  08-04-00274-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
23rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Brazoria County, Texas

Appellee.                           )

                                                                              )                     (TC# 44,945)

                                                                              )

 

 

O
P I N I O N

 

Appellant
Christopher Montes Nelson was indicted for possession of cocaine, weighing at
least four grams but less than two hundred grams with intent to deliver.  In this indictment, the offense was enhanced
by three prior felony convictions. 
Appellant pled not guilty to the charged offense.  The jury found Appellant guilty of the
offense as charged, found the enhancement paragraphs to be true, and assessed
punishment at 80 years=
imprisonment and $10,000 fine.[1]








On appeal,
Appellant raises four issues, in which he argues that the trial court abused
its discretion:  (1) by denying his motion
to suppress evidence obtained from the search of his home; (2) by admitting his
oral statement which was obtained during a custodial interrogation; (3) by
refusing to grant a mistrial following the State=s
improper jury argument; and (4) by allowing officer testimony as to the
psychological and physiological effects of ecstasy, cocaine, and
marijuana.  We affirm.

On March 27, 2003,
Captain Richard Miller, supervisor of the criminal investigation and narcotic
divisions of the Freeport Police Department, obtained a search warrant for
Appellant=s
residence in Brazoria County.  The
following day, Captain Miller and several other police officers went to
Appellant=s
residence to execute the search warrant, specifically looking for controlled
substances.  When they arrived that
morning, the officers observed that Appellant=s
vehicle was not at the residence so they began a Arolling
surveillance@
operation to locate the vehicle.  When
the vehicle was located they followed it back to the residence.








Captain Miller
made contact with the vehicle occupants, Natasha Hernandez and a young child,
and identified himself and the other officers. 
He informed Ms. Hernandez that they had a search warrant for the
residence and asked her where Appellant was located.  Captain Miller entered the residence and
encountered Appellant in the bedroom. 
Appellant was advised of the search warrant and was removed from the
residence.  Police officers found
marijuana, cocaine, and ecstasy in the residence.  The amount of controlled substances and the
way they were packaged indicated to Captain Miller that they were possessed
with intent to deliver.  The officers
found an Ohaus digital scale in the kitchen, which according to Captain Miller
is the type of scale used to weigh increments of controlled substances.  The officers also found a scanner on the
kitchen counter that was tuned to the radio frequency used by the Freeport
Police Department.  At the police
station, Appellant told Captain Miller that all the controlled substances found
inside the house belonged to him and that his wife had Anothing
to do with it.@  

Paul Van Dorn, a
forensic chemist for the Brazoria County Crime Lab performed tests on samples
of the substances recovered by the police. 
Mr. Van Dorn determined that: 
State=s Exhibit
No. 33 contained 3, 4-methylenedioxy-methamphetamine, commonly known as
ecstacy, weighing 3.7631 grams; State=s
Exhibit No. 32 contained cocaine, weighing 14.68 grams; and State=s Exhibit No. 36 contained marijuana,
weighing 389.2 grams.   State=s Exhibits Nos. 32, 33, and 36 were
identified as the substances seized from Appellant=s
house.

MOTIONS
TO SUPPRESS

Standard
of Review








We review the
trial court=s ruling
on a motion to suppress for abuse of discretion. Guzman v. State, 955
S.W.2d 85, 88‑9 (Tex.Crim.App. 1997). 
Under this standard, we afford almost total deference to a trial court=s determination of historical facts
supported by the record, especially when the findings are based on an
evaluation of credibility and demeanor.  Id.  We afford the same amount of deference to a
trial court=s ruling
on application of law to fact questions, also known as mixed questions of law
and fact, if the resolution of those ultimate questions turns on an evaluation
of credibility and demeanor.  Id.  We may review de novo mixed questions
of law and fact not falling within this category.  Id. 
When the trial court makes no explicit findings of historical facts, the
evidence must be reviewed in a light most favorable to the trial court=s ruling.  Carmouche v. State, 10 S.W.3d 323,
327-28 (Tex.Crim.App. 2000); Guzman, 955 S.W.2d at 88-9.  The trial court=s
ruling will be upheld if it is reasonably supported by the record and is
correct on any theory of law applicable to the case.  State v. Ross, 32 S.W.3d 853, 855-56
(Tex.Crim.App. 2000).

Motion
to Suppress Evidence Seized in Search

In Issue One,
Appellant contends that the trial court erred in denying his motion to suppress
the controlled substances seized from his home because the police officers= knock and announce procedure in
executing the search warrant was tantamount to a Ano-knock
entry@ in
violation of the Fourth Amendment.

At a pretrial
hearing on Appellant=s
motion to suppress evidence, Captain Miller testified that on March 28, 2003,
he executed the search warrant on Appellant=s
residence located at 1708 West 5th Street in Freeport, Texas.  In the officer=s
affidavit for the warrant, a confidential informant stated that he observed
Appellant in the residence with a usable amount of cocaine which was kept in a
black bag with a red stripe on it, a bag which looked similar to a shaving kit
bag.  According to Captain Miller, he
knocked on the door and announced, APolice
search warrant.@  He waited a very short period of time,
probably less than three seconds, before entering the home.  Captain Miller stated that he was the first
officer through the door.  Captain Miller
believed that there would have been time for someone to respond if that person
was very close to the door.  Captain
Miller admitted that his affidavit contained no mention of weapons being in the
house and that when he encountered Appellant, Appellant had no weapons on him
and did not attempt to destroy any of the controlled substances.  Captain Miller had previously arrested
Appellant for possession of a controlled substance.  He recalled that Appellant was not
cooperative with regard to showing him where the controlled substances were
located, but admitted that Appellant did not have a weapon at that time.








Natasha Hernandez
testified that she resided at 1708 West 5th Street with Appellant.  On the morning of March 28, Ms. Hernandez
noticed that the police were watching her at the Kroger=s
parking lot.  The police followed her to
her residence and when she stepped out of her car, Captain Miller approached
her and told her, A[t]his is
a search warrant to search the residence@
and flashed it to her.  When Captain
Miller made that statement, Ms. Hernandez was standing by her car in the
driveway, which was right outside the door of her residence.  Ms. Hernandez admitted Captain Miller
told her that he was going into the property on a search warrant.  According to Ms. Hernandez, Captain Miller
then told the other police officers to AGo,
go, go@ and they
started kicking down the door.  Ms.
Hernandez stated that there was no knock or announcement by police prior to the
entry.  In her testimony, Ms. Hernandez
indicated that it was a twenty second period between the time the police
officers ran toward the house to the time they kicked down the door.

After the hearing,
the trial court took Appellant=s
motion under advisement, but denied the motion prior to trial.

Knock
and Announce Requirement








Officers must
knock and announce their presence and purpose before entering a residence to
conduct a search.  See Richards v.
Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615
(1997).  This common law Aknock and announce@ rule forms a part of the
reasonableness inquiry of a search and seizure under the Fourth Amendment.  Wilson v. Arkansas, 514 U.S. 927, 930-31,
115 S.Ct. 1914, 1916, 131 L.Ed.2d 976 (1995). 
The purpose of the Aknock
and announce@ rule is
to:  (1) protect officers and residents
from potential violence; (2) prevent the unnecessary destruction of private
property; and (3) protect residents from unnecessary intrusion into their
private lives.  See United States v.
Cantu, 230 F.3d 148, 151 (5th Cir. 2000).

Nevertheless,
there are exceptions to this common law rule. 
Officers are not required to knock and announce where they have a
reasonable suspicion that knocking and announcing, under the particular
circumstances of the case, would be dangerous or futile, or would inhibit
investigation of the crime, such as allowing the destruction of evidence.  Richards, 520 U.S. at 394, 117 S.Ct.
at 1421.

In determining
reasonableness in a knock and announce situation, each situation should be
decided on a case by case basis by examining the totality of the
circumstances.  United States v. Banks,
540 U.S. 31, 36, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003).  The reasonable suspicion showing is not high,
but the police are required to make it whenever the reasonableness of a Ano knock@
entry is challenged.  Richards,
520 U.S. at 394‑95, 117 S.Ct. at 1422. 
In determining whether reasonable suspicion exists, we look at the facts
known to the officers in the events leading up to the entry into the residence
and view those events from the standpoint of an objectively reasonable police
officer.  Ornelas v. United States,
517 U.S. 690, 696, 116 S.Ct. 1657, 1661‑62, 134 L.Ed.2d 911 (1996).  Reasonableness is evaluated at the time of
the entry. Richards, 520 U.S. at 395, 117 S.Ct. at 1422.








In his brief,
Appellant contends that the police violated the knock and announce rule by
waiting less than three seconds between the announcement and forced entry into
his home.  Appellant asserts that this
was tantamount to a Ano-knock@ entry and that because there were no
exigent circumstances to justify a Ano-knock@ entry, the search was
unreasonable.  In essence, Appellant=s complaint challenges the
reasonableness of the search based on insufficient notice or no notice of the
police officers= entry
and thus, we will address his complaint in light of any exigency circumstances
that would permit police officers to legitimately dispense with the knock and
announce requirement.

In this case, the
records shows that at the time of entry, police officers knew the following
facts:  (1) there was probable cause to
believe Appellant possessed a usable amount of cocaine with the intent to
deliver the same in his residence; (2) the confidential informant stated that
Appellant kept the cocaine in a bag that looked similar to a shaving kit bag;
(3) Officer Miller knew Appellant from previous arrests, and in one particular
instance, Appellant was uncooperative in the search; (4) the search warrant was
executed in the morning, after the police followed the Appellant=s vehicle from a local grocery store;
and (5) police officers were outside Appellant=s
residence with Ms. Hernandez for about twenty seconds before they knocked on
the door and announced their presence. 
From the known facts, the police could have reasonably concluded that:  Appellant possessed a quantity of cocaine
that could easily have been destroyed and that it was located in a bag normally
kept in a bathroom; that Appellant may have been alerted to the officers= presence; and at the very least, Appellant
was awake because it was daytime and his vehicle was being used by another
person.  Further, Appellant had a
previous history of arrests for possession of controlled substances and had
been uncooperative on at least one occasion. 
While there was no evidence that the police had information that weapons
were at the residence, they had reasonable suspicion that waiting for a
response beyond the time needed for someone close to the door to answer would
have led to the destruction of evidence in this particular case.  Under these circumstances, we cannot conclude
that the police waited an unreasonable amount of time before making their entry
for Fourth Amendment purposes.








Because there were
exigent circumstances that justified the short wait between the knock and
announce and the entry in this case, we conclude that the search did not
violate the knock and announce rule, and thus, was not unreasonable.  Therefore, the trial court did not abuse its
discretion in denying Appellant=s
motion to suppress the evidence seized in the search on Fourth Amendment
grounds.  Issue One is overruled.

Motion
to Suppress Oral Statement

In Issue Two,
Appellant argues the trial court abused its discretion by admitting his unrecorded
oral statement obtained by police pursuant to custodial interrogation.  Prior to trial, the trial court conducted a
hearing on Appellant=s
motion to suppress his statement to police on grounds that the statement was
obtained as a result of a custodial interrogation and did not meet the
requirements of Article 38.22 of the Texas Code of Criminal Procedure.  In response, the State contends that
Appellant=s oral
statement was properly admitted because it was not the result of custodial
interrogation, and thus, Article 38.22 and its Miranda warnings do not
apply.  

Appellant=s Oral Statement

The State called
two witnesses at the suppression hearing, Justice of the Peace Milan Miller and
Captain Richard Miller.  Judge Miller
testified that on March 28, 2003, he informed Appellant of the charges against
him and his statutory rights at the Freeport Jail, which is located at the
Freeport Police Department.  After Judge
Miller gave Appellant the warnings, Appellant asked to speak to Captain
Miller.  Judge Miller stated that the
request was in response to Appellant=s
wife being charged with the same charges as he was, not in response to anything
Judge Miller had told him.  Judge Miller
informed the jailer that Appellant wanted to see Captain Miller.








Captain Miller
testified that Appellant was transported to Freeport Jail after the search
warrant was executed.  Captain Miller,
however, returned to his office at the police department and was not involved
in the booking-in process at the jail. 
Captain Miller was later contacted by the jailer and told that Appellant
wanted to speak to him.  Appellant was
seated on a bench when Captain Miller entered the booking room.  Judge Miller and Jim Zannell, the jailer,
were also present.  Captain Miller walked
in, sat on the bench next to Appellant, and asked him Awhat=s up?@  According to Captain Miller, Appellant began
to explain that Ms. Hernandez had nothing to do with any of the controlled
substances found inside the residence, that he wanted to claim responsibility
for all of it, and go to prison.  Captain
Miller did not ask Appellant anything in response to the statements.  Captain Miller explained to Appellant that
Ms. Hernandez had been charged and at that point it would be up to a grand
jury.

On
cross-examination, Captain Miller testified that the purpose of his question, Awhat=s
up,@ was not made to elicit information
from Appellant.  Appellant appeared
coherent at the time he made the statement. 
Captain Miller conceded that Appellant was in custody at the time and
that their conversation was not being recorded.

Appellant
testified at the suppression hearing. 
Appellant admitted that he received the statutory warnings from Judge
Miller.  He also admitted that he asked
to speak to Captain Miller.  Appellant
interpreted Awhat=s up@
to mean what went on in the house.  He
acknowledged that he had made the statement to Captain Miller in response to
the question.  








On
cross-examination, Appellant claimed that Captain Miller questioned him about
the drugs found in the house and asked him to become an informant, but he
refused.  Appellant admitted that he has
been arrested several times, that he knew he could hire an attorney or have a
court appointed attorney, and knew that he did not have to talk with
police.  Appellant stated that the reason
he wanted to talk to Captain Miller was that he did not want Ms. Hernandez to
be charged since she was pregnant and because the search and arrest warrant was
only for him.  However, Appellant later
stated that he did not know why Ms. Hernandez or he had been arrested and asked
to talk with Captain Miller in order to ask him why she was being
arrested.  

Custodial
Interrogation

Article 38.22 of
the Texas Code of Criminal Procedure, which governs when statements by the
defendant may be used at trial, applies only to statements made as a result of
custodial interrogation.  See Tex.Code Crim.Proc. Ann. art. 38.22, '' 2, 5 (Vernon 2005); Morris
v. State, 897 S.W.2d 528, 531 (Tex.App.-‑El Paso 1995, no pet.).  If the appellant=s
statements do not stem from custodial interrogation, neither Miranda nor
Article 38.22 requires their suppression. 
Morris, 897 S.W.2d at 531. 
Custodial interrogation requires: 
(1) that the suspect must have been Ain
custody;@ and (2)
the police must have Ainterrogated@ the suspect either by express
questioning or its functional equivalent. 
 Morris, 897 S.W.2d at 531;
see also Rhode Island v. Innis, 446 U.S. 291, 300‑02, 100 S.Ct.
1682, 1689-90, 64 L.Ed.2d 297 (1980). 
Not all police questioning is Ainterrogation.@ 
Jones v. State, 795 S.W.2d 171, 174 (Tex.Crim.App. 1990).  Interrogation refers to words, actions, or
questions by police which police should know are reasonably likely to elicit an
incriminating response.  Innis,
446 U.S. at 300‑02, 100 S.Ct. 1689-90; see also Jones, 795 S.W.2d
at 174 & n.3.  The term Aincriminating response@ refers to any response that the
prosecution may seek to introduce at trial. 
Innis, 446 U.S. at 301 n.5, 100 S.Ct. at 1690 n.5.








Here, the State
does not dispute that Appellant was in custody at the time of his
statement.  Rather, it argues that the
statement was not the result of an interrogation.  Appellant contends that under the
circumstances, the police knew that he Awould
likely try to take the heat off his pregnant wife . . . .@ 
The record shows that Appellant requested to talk to Captain
Miller.  Appellant was in the booking
room at the time.  There is no evidence
that Captain Miller knew why or what Appellant intended to speak to him
about.  Moreover, there is no evidence
that Captain Miller knew Ms. Hernandez was pregnant or had any other knowledge
of possible motivations for Appellant=s
desire to speak with him.  

Appellant
testified that he interpreted Captain Miller=s
question to be an inquiry as to what happened in the house.  However, such a broad understanding of the question
is an unreasonable interpretation of the inquiry.  Based on the facts presented, the trial court
could have reasonably concluded that Captain Miller=s
question, Awhat=s up,@
made upon entering the booking room at Appellant=s
request was a benign and common greeting, that was not reasonably likely to
elicit an incriminating response. 
Consequently, Appellant=s
statement was not the result of an interrogation and was thus, admissible at
trial.  Therefore, we conclude the trial
court did not abuse its discretion in allowing the statement into
evidence.  Issue Two is overruled.      

IMPROPER
JURY ARGUMENT

In his third
issue, Appellant argues that the trial court abused its discretion by refusing
to grant a mistrial following improper jury argument by the State.

When the trial
court sustains an objection and instructs the jury to disregard but denies a
defendant=s motion
for mistrial, the issue is whether the trial court abused its discretion in
denying the mistrial.  Hawkins v.
State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004).  A mistrial is only required in extreme
circumstances in which the prejudice is incurable.  See id.  








Such a circumstance exists when the
improper conduct is Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile.@  Hawkins, 135 S.W.3d at 77, citing
Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999), cert. denied,
529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).  Generally, an instruction to disregard
impermissible argument cures any prejudicial effect.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex.Crim.App. 2000).

During closing
argument, the prosecutor stated: 

You don=t
accidently possess this amount of narcotics, and the only reason he possessed
that amount of narcotics is to sell them to somebody else, to somebody else=s children, to somebody else=s husband and wife --

 

Defense counsel objected, arguing
that the State was arguing outside the record. 
The trial court sustained the objection. 
Upon request, the trial court instructed the jury to disregard the
prosecutor=s
statement.  The trial court, however,
denied Appellant=s request
for a mistrial.

In this case, a
forensic chemist testified that the controlled substances recovered from
Appellant=s house
consisted of:  14 and one-half pills of
ecstasy, weighing 3.7631 grams; cocaine, weighing 14.68 grams; and marijuana,
weighing 389.2 grams.  The cocaine was
found in six individually packaged baggies. 
These baggies were located in Appellant=s
bedroom in a pair of pants.  A larger
quantity of cocaine was found in a film canister in a bedroom closet.  The ecstasy pills were also found in the pair
of pants.  Captain Miller testified that
ecstasy is normally sold in tablet form and in simple possession cases it is
possessed in quantities of one to two tablets. 
Captain Miller believed that the amount of drugs and the way they were
packaged indicated an intent to deliver. 
The police also found an Ohaus digital scale in Appellant=s house, an instrument which Captain
Miller testified is the type of scale used to weigh out increments of
controlled substances.








Proper jury
argument consists of:  (1) summation of
the evidence; (2) reasonable deductions from the evidence; (3) answer to
argument of opposing counsel; and (4) pleas for law enforcement.  See Felder v. State, 848 S.W.2d 85,
94-5 (Tex.Crim.App. 1992)(en banc); Calderon v. State, 950 S.W.2d 121,
133 (Tex.App.--El Paso 1997, no pet.). 
Wide latitude is given to counsel in drawing inferences from the
evidence provided the inferences are reasonable, fair, legitimate, and offered
in good faith.  Denison v. State,
651 S.W.2d 754, 761-62 (Tex.Crim.App. 1983)(en banc).

Based upon the
evidence admitted during the trial, we conclude the prosecutor drew a fair and
reasonable inference that Appellant possessed the controlled substances for the
purpose of selling them to people or their family members.  To the extent the State=s argument was improper, we consider
the following factors to determine whether the trial court abused its
discretion by denying a mistrial for improper argument:  (1) the severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor=s
remarks); (2) the measures adopted to cure the misconduct (the effect of any
cautionary instruction given by the court); and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting the
conviction).  See Threadgill v. State,
146 S.W.3d 654, 666-67 (Tex.Crim.App. 2004); Mosley v. State, 983 S.W.2d
249, 259 (Tex.Crim.App. 1998); see also Hawkins, 135 S.W.3d at 77 (Mosley
factors should be used to evaluate whether the trial court abused its
discretion in denying a mistrial from improper argument that does not implicate
constitutional rights).








In balancing these
factors, we find that the misconduct, if any, was not particularly severe and
was an isolated occurrence.  Contrary to
Appellant=s
assertions, the prosecutor=s
statement would not have necessarily led the jury to think that Appellant was
selling drugs to their own spouses and children.  The trial court took sufficient curative
action to cure any resulting prejudicial effect from the prosecutor=s statement.  Finally, after reviewing the entire record,
we find conviction was certain, particularly given the physical evidence
recovered from Appellant=s
residence and witnesses=
testimony, including Captain Miller=s
testimony concerning Appellant=s
oral statements.  Considering the
mildness of the prosecutor=s
statement, the adequate curative action of the trial court, and the strength of
the State=s case,
we conclude the trial court did not abuse its discretion in denying the
mistrial.  Issue Three is overruled.

OFFICER
TESTIMONY DURING PUNISHMENT PHASE

In his fourth issue,
Appellant contends the trial court abused its discretion in allowing Captain
Miller to testify as to the psychological and physiological effects of ecstasy,
cocaine, and marijuana because Captain Miller=s
testimony was not admissible under Rule 701 as a lay witness and he was not
qualified to testify as an expert on these subjects.

Preservation
of Error

At trial,
Appellant objected to Captain Miller=s
testimony on confrontation grounds, not on the basis that the State failed to
establish the admissibility of the complained-of testimony pursuant to Texas
Rules of Evidence 701, 702, or 703.  To
preserve an issue for appeal, there must be a timely objection that
specifically states the legal basis for the objection.  Rezac v. State, 782 S.W.2d 869, 870
(Tex.Crim.App. 1990); Maldonado v. State, 902 S.W.2d 708, 711
(Tex.App.--El Paso 1995, no pet.). 
Appellant=s complaint
on appeal fails to comport with his trial objections, therefore we find he has
waived this issue for review.  See
Tex.R.App.P. 33.1(a).  Issue Four is overruled.

 








We affirm the
trial court=s
judgment.

 

 

August
18, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellant was also indicted on a charge of possession of 3,
4-methylenedioxy-methamphetamine (Aecstasy@) with intent to deliver in cause
number 44,946 and on a charge of possession of marijuana in cause number
44,947.  These charges were tried
together with the instant case. 
Appellant has also appealed the judgments rendered in those cases, which
are affirmed by opinions issued this same day in cause numbers 08-04-00275-CR
and 08-04-00276-CR, respectively.