COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NOS.
 2-05-114-CR 

                                                
2-05-115-CR

 

 

ANTHONY GLENN BRIDGEWATER                                          APPELLANT

A/K/A
ANTHONY G. BRIDGEWATER

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.
Introduction








Appellant Anthony Glenn
Bridgewater a/k/a Anthony G. Bridgewater was convicted by a jury of unlawful
possession of a firearm by a felon and possession of a controlled substance of
one gram or more but less than four grams. 
The jury assessed punishment at imprisonment for fifteen years= and fifty years=
respectively.  Bridgewater now raises
five points on appeal.  In points one
through four, Bridgewater argues that the trial court erred by denying his
motion to suppress evidence because his rights under the United States Constitution
and Texas statutory law were violated when officers searched his car without a
warrant and interrogated him without reading him his Miranda rights.[2]  In his fifth point, Bridgewater argues that
the trial court erred by overruling his Batson objections during voir
dire.[3]  We affirm.

II.
Background

On January 29, 2004, Officer
Joan Gray of the Fort Worth Police Department was working undercover as a
prostitute decoy.  Officer Daniel Mesa
was stationed behind a tree approximately three to five feet from Gray in order
to provide her protection.  Gray wore a
body microphone so that another officer, James K. Driver, who was situated
approximately one-hundred yards away, could monitor her encounters.[4]









Driver testified that
Bridgewater drove past Gray, made a U-turn, and stopped directly in front of
her.  Gray stated that she asked him if
he was looking for a date.  Bridgewater
said Ayeah, get in.@  Gray then asked Bridgewater if he had twenty
dollars, and he responded by saying AI=ll take care
of you.  Get in [the car].@  Gray told Bridgewater that if
he wanted to have sexual intercourse, she needed him to use a condom.  Bridgewater nodded, so Gray showed him an
assortment of condoms in her hand.  She
asked him if yellow was okay, and he said Ayes.@  She told him that it was going to cost him
twenty dollars and asked him to meet her around the corner. 

Once Bridgewater drove around
the corner, a police officer who was waiting there arrested him for
prostitution.  Gray then identified
Bridgewater as the man that she had spoken with previously.  Without reading Bridgewater his Miranda rights,
Mesa asked Bridgewater if he needed anything out of his car, such as medication
or money.  Bridgewater stated that he did
not have any medicine in the car but that there was Asomething@ in the
car.  Mesa searched Bridgewater=s car and found a pistol and substances that appeared to be cocaine
and marijuana. 








Bridgewater sought to have
the evidence of the gun and the drugs suppressed at a pre-trial hearing and
again at trial.  The trial court denied
both requests to suppress the evidence, and thereafter Bridgewater was
convicted by a jury of unlawful possession of a firearm by a felon and
possession of a controlled substance of one gram or more but less than four
grams.  This appeal now follows.

III.
Motion to Suppress

Because Bridgewater=s first four points essentially raise the same issue and are combined
in Bridgewater=s brief, we
too will address his first four  points
together.  Bridgewater argues that the
trial court erred by failing to exclude the statement he made to the police
admitting that Asomething@ was in his car as well as the gun and drugs found in his car because
this evidence was obtained as the result of an illegal arrest.  Specifically, Bridgewater argues that the
arrest was illegal because the police did not have a warrant and the arrest did
not fall within one of the exceptions to the warrant requirement set forth in
chapter 14 of the code of criminal procedure. 
However, if we hold that the arrest was legal, then in the alternative
Bridgewater argues that the evidence at issue was inadmissible because it was
obtained as the result of custodial interrogation after the police failed to
apprise him of his Miranda rights. 









A. Standard of Review

We review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of
review. See Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  We give almost
total deference to the trial court=s rulings on
questions of historical fact and application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor, while we review de novo
application-of-law-to-fact questions that do not turn upon credibility and
demeanor.  Johnson v. State, 68
S.W.3d 644, 652-53 (Tex. Crim. App. 2002). 
This case presents the latter situation and we will therefore apply the
de novo standard of review to the application-of-law-to-fact questions.

When there are no explicit findings of historical fact, the
evidence must be viewed in the light most favorable to the trial court=s ruling.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005).  We must uphold
the trial court=s ruling if it is supported by the record
and correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling. Armendariz v. State, 123 S.W.3d
401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974.  In this case, there are no explicit findings
of facts, therefore we will view the evidence in the light most favorable to
the trial court=s ruling. 









B. Arrest

Appellant argues that police arrested him without a warrant
and without benefit of an exception to the warrant requirement.  As such, Bridgewater argues that the trial
court erred in denying his motion to suppress the gun and drug evidence found
in his car because the evidence was the fruit of an illegal arrest.  The State
concedes that Bridgewater was arrested without a warrant, but argues that the
warrantless arrest was proper because a statutory warrant exception applied. 

The United States
Constitution authorizes an arrest without warrant on probable cause; but, in
Texas, the authority to arrest a suspect without a warrant is governed by
statute.  See Florida v. White,
526 U.S. 559, 564, 119 S. Ct. 1555, 1559 (1999); DeJarnette v. State,
732 S.W.2d 346, 349 (Tex. Crim. App. 1987). 
In Texas, a person may be legally arrested without a warrant only if
(1) the arrest falls within one of the statutory provisions authorizing a
warrantless arrest, and (2) the arrest meets the applicable probable cause
requirement.  See Anderson v. State,
932 S.W.2d 502, 506 (Tex. Crim. App. 1996), cert. denied, 521 U.S. 1122
(1997).  Therefore, we must decide
whether one of the statutory warrant exceptions applied and whether the arrest
met the applicable probable cause standard. 
Id. 








In this case, the State
argues that Bridgewater=s arrest
fell within the  statutory exception
contained in article 14.01(b) of the code of criminal procedure.  Article 14.01(b) provides that A[a] peace officer may arrest an offender without a warrant for any
offense committed in his presence or within his view.@  See Tex. Code Crim. Proc. art. 14.01(b)
(Vernon 2005).  The test for probable
cause for a warrantless arrest under this provision is whether at that moment
the facts and circumstances within the officer=s knowledge and of which he had reasonably trustworthy information
were sufficient to justify  a prudent man
in believing that the arrested person had committed or was committing an
offense.  Beverly v. State, 792
S.W.2d 103, 104-05 (Tex. Crim App. 1990).  








The State argues that the trial court judge did not abuse
its discretion in concluding that the police had probable cause to believe that
Bridgewater committed the offense of prostitution in view of an officer.  We agree. 
The Texas Penal Code provides that a person commits the offense of
prostitution if he knowingly offers to engage, agrees to engage, or engages in
sexual conduct for a fee.  Tex. Penal Code Ann. ' 43.02(a)(1)
(Vernon 2003).  Given (1) Bridgewater=s response to Gray
of AI=ll take care of
you.  Get in,@ when Gray told
him that her fee for sexual intercourse was twenty dollars, (2) his statement
to Gray that a yellow condom would be Aokay,@ and (3) the fact
that Bridgewater drove his vehicle around the corner to the place where Gray
directed him to meet her, we conclude, after viewing the evidence in the light
most favorable to the ruling, that probable cause existed for a warrantless
arrest for prostitution.  See Beverly,
792 S.W.2d at 104-05.  As such, we hold that the warrantless arrest was authorized under
article 14.01(b) of the Texas Code of Criminal Procedure and was reasonable
under the fourth amendment of the United States Constitution.  See U.S.
Const. amend. IV; Maryland v. Pringle, 540 U.S. 366, 370, 124 S.
Ct. 795, 799 (2003) (holding a warrantless arrest of an individual in a public
place for a felony, or a misdemeanor committed in the officer=s presence, is consistent with the Fourth Amendment if the arrest is
supported by probable cause); Tex. Crim.
Proc. Code Ann art. 14.01(b).[5]


C. Custodial Interrogation

 








Bridgewater
next argues that the statement obtained after his arrest was inadmissible
because Davis questioned him without first advising him of his Miranda
rights.  Further, he contends that the
trial court erred by denying his motion to suppress the gun and drug evidence
because they were discovered as a result of the unwarned statement.  He argues that the gun and drugs should be
excluded as fruits of illegal activity in accordance with article 38.23 of the
Texas Code of Criminal Procedure.  We
disagree. 

In Miranda
v. Arizona, The United States Supreme Court held that a person
questioned by law enforcement officers after being Ataken into custody or otherwise deprived of his freedom of action in
any significant way@ must first Abe warned that he has a right to remain silent, that any statement he
does make may be used as evidence against him, and that he has a right to the
presence of an attorney, either retained or appointed.@  384 U.S. at 444, 86 S. Ct. at
1612.  Statements elicited in
noncompliance with this rule may not be admitted for certain purposes in a
criminal trial.  Compare Miranda,
384 U.S. at 492, 494, 86 S. Ct. at 1638, with Harris v. New York,
401 U.S. 222, 226, 91 S. Ct. 643, 646 (1971). 
In order for the Miranda safeguards to apply, there must be two
showings: (1) the suspect must have been Ain custody,@ and (2) the
police must have Ainterrogated@ the suspect either by express questioning or its functional
equivalent.  Morris v. State, 897
S.W.2d 528, 531 (Tex. App.CEl Paso 1995, no pet.) (citing Jones v. State, 795 S.W.2d 171, 174
(Tex. Crim. App. 1990)). 








Article 38.22 of the Texas Code of
Criminal Procedure generally precludes the use of statements that result from
custodial interrogation absent compliance with its procedural safeguards.  Tex.
Code Crim. Proc. Ann. art. 38.22 ' 2 (Vernon 2005);
Galloway v. State, 778 S.W.2d 110, 112 (Tex. App.CHouston [14th
Dist.] 1989, no pet.); see Shiflet v. State, 732 S.W.2d 622, 623 (Tex.
Crim. App. 1985).  However, article
38.22, section five specifically exempts statements which do not Astem from
custodial interrogation.@  Tex. Code Crim. Proc. Ann. art. 38.22 ' 5; Shiflet,
732 S.W.2d at 623; Galloway, 778 S.W.2d at 112.  Thus, if Bridgewater=s statement did
not stem from custodial interrogation, neither Miranda nor article 38.22
requires its suppression.  See
Galloway, 778 S.W.2d at 112.

The State contends that Mesa=s question to
Bridgewater did not constitute interrogation.[6]  Instead, the State characterizes  Mesa=s question as a
general, routine question that officers normally ask defendants when they are
separated from their vehicles.








Interrogation encompasses any word or
action on the part of the officers that they should know is reasonably likely
to elicit an incriminating response from the suspect.  Shepherd v. State, 915 S.W.2d 177, 179
(Tex. App.BFort Worth 1996, pet ref=d).  Questioning normally attendant to arrest and
custody is not interrogation.  Morris,
897 S.W.2d at 531.

Before Bridgewater was taken to jail, Mesa
asked him if there was anything that he needed out of his car such as medicine,
a billfold, or money.  Bridgewater
answered Officer Mesa=s question in the negative and then
volunteered that Asomething was in the car.@[7]  Mesa=s question was not
open-ended and in fact was qualified by listing the specific examples of
medicine, billfold, or money.  Further,
this question was asked in a series of questions regarding identification, age,
and other biographical information.  








Such questions are necessary in arrest
situations to enable authorities to provide for and be aware of any special
physical needs a suspect might have; therefore, we hold that the question at
issue in this case was the type that normally attends an arrest or custody and
is not of a constitutionally-suspect interrogative nature.  See Branch v. State, 932 S.W.2d 577,
581 (Tex. App.CTyler 1995 no pet.) (holding question that
in part related to physical needs of appellant is generally not of a
constitutionally-suspect interrogative nature). 

Because we hold that there was probable cause to arrest Bridgewater,
that his warrantless arrest fell under a statutory exception, and that
Bridgewater=s statement
to Mesa was not a product of custodial interrogation, we hold that the trial
court properly denied his motion to suppress the evidence and overrule
Bridgewater=s first four
points.       

IV. Batson Challenges

In his fifth point, Bridegwater argues that the trial court erred in
overruling his objections to the State=s peremptory challenges to two veniremembers, Cynthia Muhammad and
Charles Boxley.  He argues that the State
excused Muhammad and Boxley for racially-motivated reasons, thus violating Batson
v. Kentucky.  See Batson, 476
U.S. 79, 106 S. Ct. 1712.








In a Batson challenge,
the opponent to the peremptory challenge must make out a prima facie case of
racial discrimination.  Purkett v.
Elam, 514 U.S. 765, 767, 155 S. Ct. 1769, 1770 (1995).  The burden of production then shifts to the
proponent of the strike to come forward with a race-neutral explanation.  Id. at 767, 1771.  Unless a discriminatory intent is inherent in
the prosecutor=s explanation, the reason offered will be
deemed race-neutral.  Id.  If a race-neutral explanation is tendered,
the trial court must decide whether the opponent of the strike has proved
purposeful discrimination.  Id.  

We review the
record of the Batson hearing and the voir dire examination in the light
most favorable to the trial court=s ruling.  Morris v. State, 940 S.W.2d
610, 612 (Tex. Crim. App. 1996).  We will
not disturb a trial court=s ruling on a Batson issue unless
it is clearly erroneous.  Id.

Bridgewater
objected to the State=s peremptory challenges on the basis that
he was African-American, as were both Muhammad and Boxley.  However, because the State offered
race-neutral reasons for the strikes, the prima facie case inquiry is
moot.  Johnson v. State, 68 S.W.3d
644, 649 (Tex. Crim. App. 2002).  The
State explained that the reason that it struck Muhammad was because he only
listed rehabilitation as a potential for punishment, and that it struck Boxley
because he had previously received deferred adjudication for an unlawfully
concealed weapon violation.  At this
time, the burden then shifted to Bridgewater to show purposeful discrimination,
but he made no effort to contest any of the race-neutral reasons proffered by
the State.  A party=s failure to offer
any real rebuttal to a proffered race-neutral explanation can be fatal to his
claim.  Id.  Because Bridgewater did not carry his burden
of proof, we overrule his fifth point on appeal.








V. Conclusion

Having overruled
all five of Bridgewater=s points on appeal, we affirm the trial
court=s judgment. 

 

PER CURIAM

 

PANEL F:    MCCOY, DAUPHINOT, and HOLMAN, JJ.

 

DAUPHINOT, J. concurs without
opinion.

 

DO NOT PUBLISH

Tex. R.
App. P. 47.2(b)

 

DELIVERED:  June 22, 2006

 

 

 

 

 

 

 

 








 











[1]See Tex. R. App. P. 47.4.





[2]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602
(1966).





[3]Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712
(1986).





[4]The conversation was not recorded.





[5]In order to support his argument
that he did not commit the offense of prostitution in view of an officer, in
his brief Bridgewater appears to argues that the evidence is legally
insufficient to support his conviction. 
However, he does not raise legal insufficiency as one of his points on
appeal.  Therefore, we will not address
this issue.





[6]The State does not assert that
Bridgewater was not in custody at the time that he was questioned by Mesa, only
that Mesa=s question did not constitute Ainterrogation.@ 


 





[7]At trial, Officer Mesa testified
that after Bridgewater was arrested, he asked Bridgewater if he needed anything
from his car before Mesa inventoried the car, and that in response, Bridgewater
told him that he [Bridgewater] had a Agun@ in his car. However, at the
pretrial motion-to- suppress hearing, Mesa testified that Bridgewater told him
that he had Asomething@ in his car.