COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|   |   |   |
|---|---|---|
| ALEXIS AGUAYO, | § | No. 08-13-00283-CR |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 7 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20120C10722) |
|   | § |   |

## **O P I N I O N**

This is an appeal from a conviction in a misdemeanor driving while intoxicated case. A jury found Appellant guilty and the trial court assessed his punishment at confinement for 365 days, probated for twenty one months, along with a partially probated fine. We affirm.

### **FACTUAL SUMMARY**

Appellant was involved in a somewhat spectacular traffic accident on May 27, 2012. Witnesses at the scene indicated that Appellant, while driving erratically, ran a red light and hit a pick-up truck which was making a lawful left hand turn in front of him. The pick-up spun around 180 degrees. Appellant's vehicle caught fire just as he stepped out of the vehicle. He was dragged away from the burning car by a good Samaritan. At the scene, he was going in and out

of consciousness. Several witnesses smelled alcohol on his person. He was seventeen years old on the date of the accident.

Appellant was taken to Del Sol Medical Center. The exact nature of his injuries is not developed in the record. While at the Emergency Department, he was questioned by Officer Albert Gandara who had investigated the accident. Based on his observations, Officer Gandara placed Appellant under arrest for driving while intoxicated. The officer read Appellant the statutorily required warnings pertaining to giving blood specimens, commonly referred to as the DIC-24. Appellant then signed a form giving permission for his blood to be drawn. The blood sample revealed a blood alcohol level of 0.188. He was subsequently charged with operating a motor vehicle in a public place with an alcohol concentration of 0.15 or more, a class A misdemeanor. TEX.PENAL CODE ANN. § 49.04 (d)(West Supp. 2014).

This case was tried to a jury. During the course of the trial, defense counsel took Officer Gandara on *voir dire* outside the presence of the jury to challenge the admission of the blood sample evidence. Officer Gandara testified that he met Appellant at the Del Sol Emergency Room. Officer Gandara was in uniform, speaking to Appellant who was lying on a bed. The officer would have first inquired as to Appellant's recollection of the accident, and matters such as where he had been and where he was going. Officer Gandara recalled that Appellant's responses to those questions were all coherent. Appellant was able to recall the type of vehicle he was in, and where he had been immediately before the accident. According to the officer, Appellant was conscious during the entire encounter. Officer Gandara acknowledged that he did not know what medications Appellant may have been given, nor what injuries Appellant may have sustained, other than they were not life threatening.

2

Officer Gandara read the DIC-24 form to Appellant which informed him that: he was under arrest; a refusal to give a specimen would result in a driver's license suspension for not less than 180 days; a refusal might still result in the officer applying for a warrant; and a refusal may be admissible in any subsequent prosecution. After giving the statutory warnings, Officer Gandara testified that Appellant gave voluntary consent for the blood draw, which is evidenced by Appellant's signature on a consent form.[1] Officer Gandara's interaction with Appellant was not videotaped.

Appellant was also permitted to take the stand for the limited purpose of addressing the consent issue, again outside the presence of the jury. He recalled signing the consent form. He was on medication for his foot as he was in pain. As a result, Appellant claimed he was not totally conscious while in the hospital, nor while he interacted with Officer Gandara. While he recalled only parts of his dealings with the Officer, he understood the Officer was *requesting* permission to take his blood. He also understood that if he did not sign the form, his license would be suspended, and if did sign it, they were going to draw blood. Appellant did not think his consent was voluntary because he did not recall everything that was said. Based on this testimony, counsel objected that his consent for the blood draw was not voluntary. He also objected that the Officer did not videotape the consent process as Appellant was seventeen years old at the time. The trial court overruled Appellant's objections. No findings of fact or conclusion of law were ever requested.

The issue of consent was also submitted to the jury by way of instruction.[2] Accordingly, the jury heard substantially the same testimony that Officer Gandara had given in the *voir dire*,

---

[1] Appellant's signature on the consent form looks different from that on other court paperwork. The State suggests this was because he was lying on his back when he signed the consent form.

[2] The jury charge provided:

3

with a few additions. Before the jury, Officer Gandara also testified that Appellant still smelled of alcohol at the hospital about an hour after the accident. Officer Gandara performed the horizontal gaze nystagmus test, which looks for intoxication clues from eye movements, and Appellant tested positive. Officer Gandara also acknowledged that he had not advised Appellant of his right to remain silent, or to counsel, before seeking consent to take the blood draw.[3] The phlebotomist who drew Appellant's blood recalled being with him for about twenty minutes and that he was conscious during that entire period of time.

Appellant did not testify before the jury. Following his conviction, Appellant re-urged his objections to the blood evidence which trial court again overruled. This appeal follows.

Appellant brings two issues for review. While the first issue is somewhat multifarious, we discern essentially two arguments being advanced.[4] Appellant in part complains that his Fifth Amendment rights, as statutorily codified in Article 38.22 of the Code of Criminal Procedure, and as explained in *Miranda v. Arizona*, were violated in the process whereby he gave consent. Second, he contends his Fourth Amendment rights against unreasonable search and seizure were violated in that his consent was not voluntary given.

---

You are further instructed that blood may not be taken from an individual without their consent or without a search warrant, unless done by medical personnel for a lawful medical purpose in treating an individual seeking medical care.

Therefore, before you consider the blood evidence in this case, you must first find beyond a reasonable doubt that the blood was drawn with consent. If you do not so find beyond a reasonable doubt, you will disregard such evidence,

[3] Based on this testimony, Appellant raised additional objections to the blood draw evidence, which the trial court also overruled.

[4] Appellant parses Issue One this way: "Officer Gandara violated seventeen year old Alexis Aguayo's constitutional rights when he took blood from him after effecting an arrest in an attempt to bolster the States [sic] case by the addition of evidence that was not required for probable cause. The blood draw when looked at under the totality of the circumstances test violated the Defendant's 5th Amendment Constitutional rights, his rights under Miranda as commonly known, and the Texas Code of Criminal Procedure 38.22 as well. The blood was taken from him in the hospital while he was under unknown medications, in pain and not having been advised or his rights or during a [sic] electronically recorded statement. This violation of rights was the substantial cause of the defendant's conviction for the offense of driving while intoxicated."

4

Appellant's second issue focuses on the lack of videotaping of his consent to give a blood sample. Specifically, he contends that his equal protection rights were violated because a seventeen-year-old who has had a prior charge of delinquency would have had the statutory right to have the entire consent process videotaped, while those without such a delinquency history do not. We address each of these matters in turn.

## FOURTH AMENDMENT ISSUES

*Applicable Law*

The Fourth Amendment prevents unreasonable searches and seizures. U.S. Const. amend. IV; *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). Taking blood from a person constitutes a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). A search or seizure conducted without a warrant is *per se* unreasonable subject to a few specifically defined and well-delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); *McGee v. State*, 105 S.W.3d 609, 615 (Tex.Crim.App. 2003). This maxim holds true for blood draws as well, and absent a warrant, the State must find a recognized exception under the Fourth Amendment to support the seizure of blood from a person. *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 at *8 (Tex.Crim.App. Nov. 26, 2014, pet. reh. granted). In this case, the State relies on one of those well recognized exceptions--voluntary consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 227, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973)(voluntary consent as a recognized exception); *Meekins v. State,* 340 S.W.3d 454, 458 (Tex.Crim.App. 2011)(same).

A driver's consent to give a blood or breath sample must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement.

*Fienen v. State*, 390 S.W.3d 328, 333 (Tex.Crim.App. 2012); *Meekins*, 340 S.W.3d at 458. The State must prove that voluntary consent by clear and convincing evidence. *Fienen*, 390 S.W.3d at 333. The question of whether a person validly consented is determined from the totality of the circumstances and from the point of view of the objectively reasonable person. *Id.*

While the Transportation Code provides that a person arrested for driving while intoxicated is deemed to have given consent to providing a breath or blood specimen, a person generally retains a right to revoke that implied consent. *Fienen,* 390 S.W.3d at 332–33; TEX.TRANSP.CODE ANN. § 724.011(a)(West 2011).[5] That refusal must be strictly honored, but it comes with consequences. *Fienen*, 390 S.W.3d at 333; *McCambridge v. State*, 712 S.W.2d 499, 504 n.16 (Tex.Crim.App. 1986). Here, for instance, the DIC-24 warnings informed Appellant that his refusal: (1) can be admissible against him in court; and (2) his driver's license will be suspended for not less than 180 days. TEX.TRANSP.CODE ANN. § 724.015(1)-(2)(West Supp. 2014). Even if he gave a sample, and an analysis of the specimen showed that he had an alcohol concentration at any positive level, his license to operate a motor vehicle would be automatically suspended for not less than 60 days, whether or not he was subsequently prosecuted as a result of the arrest. *Id*. at § 724.015(4)(rule specifically applicable to those under 21 years of age).

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). First, we afford almost total deference to a trial judge's determination of historical facts, particularly when that determination

---

[5] There are some exceptions to this revocation right not at issue in this case. The Transportation Code mandates a blood draw under several circumstances such as when the driver either has two or more prior convictions for driving under the influence, or is involved in a collision causing death or serious bodily injury. TEX.TRANSP.CODE ANN. § 724.012(b)(1),(3)(West 2011). Whether the implied consent provision of the Transportation Code meets constitutional muster under these circumstances is an issue presently pending review. *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex.Crim.App. Nov. 26, 2014, pet.reh.granted).

is based on credibility or demeanor. *Fienen,* 390 S.W.3d at 335. The trial court is the sole trier of the facts and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). The trial judge may believe or disbelieve all or part of the witness's testimony and we recognize that the trial judge is the one who had the opportunity to observe demeanor and appearance. *Id.* But questions of law and "mixed questions of law and fact" that do not depend on an evaluation of credibility and demeanor are reviewed *de novo. Fienen*, 390 S.W.3d at 335; *Guzman*, 955 S.W.2d at 89.

When findings of fact are not entered, as here, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supporting that ruling. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App. 2000). We will sustain the trial court's ruling if it finds reasonable support in the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 448.

*Analysis*

We view the record as primarily raising credibility issues which were impliedly resolved by the trial court against Appellant. Officer Gandara testified that Appellant was coherent and never lost consciousness in his presence at the hospital. Conversely, Appellant maintains he was in and out of consciousness. The phlebotomist's testimony was more consistent with Officer Gandara's recollection. The officer testified that the consent was freely given. Appellant says it was not, but only because he did not recall everything said. Appellant maintains he had an impaired level of consciousness due to medication given him at the hospital, but he never identified the medication, or the nature of his injuries, even though both were or could be known to him. Applying the applicable standard of review, we credit the trial court with almost total

7

deference in having resolved these credibility issues against Appellant and find that the evidence supports those implied findings.

We also note that while Appellant did not recall all of his conversation with Officer Gandara, he did recall the most important parts. He recalled that he was given the choice of providing a blood sample, and that if he refused, he would lose his license for a period of time. After being given that choice, he signed the consent. That decision may not have been an easy one, but it was the choice that he had nonetheless. *See South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 922-23, 74 L.Ed.2d 748 (1983)("We recognize, of course, that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices."). Having reviewed the totality of the circumstances in the light most favorable to the trial court's ruling, we conclude that the State proved by clear and convincing evidence that Appellant voluntarily consented to giving a blood specimen for testing. The trial court did not abuse its discretion by overruling Appellant's claims under the Fourth Amendment.

### FIFTH AMENDMENT, *MIRANDA*, AND ARTICLE 38.22 OBJECTIONS

Appellant also claims under Issue One that the trial court erred in admitting his statements surrounding the consent process because they were made in derogation of his rights under the Fifth Amendment, *Miranda v. Arizona*, and TEX.CODE CRIM.PROC.ANN. art. 38.22 § 2 (West Supp. 2014). The linchpin of these arguments is that Appellant was not informed of his right to counsel, and his right to remain silent, before Officer Gandara read the DIC-24 warnings and elicited his consent to the blood draw.

The Self-Incrimination Clause of the Fifth Amendment protects one from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

8

*Miranda v. Arizona* extends that protection to statements elicited in a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 461, 86 S.Ct. 1602, 1620-21, 16 L.Ed.2d 694 (1966). Article 38.22 provides that a written statement by an accused made as a result of a custodial interrogation is not admissible unless "on the face of statement" it shows the accused received, among other things, notice of the right to remain silent and right to counsel. TEX.CODE CRIM.PROC.ANN. art. 38.22 § 2(1),(3)(West Supp. 2014).

But the process of giving statutory warnings, such as the DIC-24, is not a custodial interrogation such that these constitutional or statutory guarantees apply. The United States Supreme Court articulated this point in *South Dakota v. Neville*, 459 U.S.553, 564, 103 S.Ct. 916, 922-23, 74 L.Ed.2d 748 (1983):

> In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. As we stated in *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), police words or actions 'normally attendant to arrest and custody' do not constitute interrogation. The police inquiry here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection.

*Id.* at 564 [internal footnotes omitted]; *see also Pennsylvania v. Muniz*, 496 U.S. 582, 603, 110 S.Ct. 2638, 2651, 110 L.Ed2d 528 (1990)(accused responses to scripted instructions read by Officer in administering field sobriety tests were not statements from a custodial interrogation).

Texas law has followed this reasoning. *McCambridge*, 712 S.W.2d at 506 (suspect's decision to take or refuse a breath test and the questions prompting the decision, were not part of custodial interrogation, and did not involve the constitutional privilege against self-incrimination); *Lemmons v. State*, 75 S.W.3d 513, 522 (Tex.App.--San Antonio 2002, pet. ref'd)(a request for consent for a blood sample does not constitute interrogation under the Fifth

Amendment, nor invoke a critical stage under the Sixth Amendment right to counsel); *Jones v. State*, 7 S.W.3d 172, 175 (Tex.App.--Houston [1st Dist.] 1999, pet. ref'd)(request for consent to search vehicle does not constitute interrogation under the Fifth Amendment).

Based on the foregoing, we easily dispense with Appellant's claim that the lack of *Miranda* or Article 38.22 warnings compelled the trial court to suppress the consent form, or the conversations immediately surrounding execution of the consent form. These protections simply do not apply to the largely scripted process of reading a driver the statutory DIC-24 warnings and eliciting the driver's decision whether to consent to provide a blood sample. As this court said in *Morris v. State*, 897 S.W.2d 528, 531 (Tex.App.--El Paso 1995, no pet.):

> Police requests that suspects perform sobriety tests and directions on how suspects are to do the tests do not constitute interrogation; neither do queries concerning a suspect's understanding of his rights. Likewise, asking a suspect in custody whether he will take a blood alcohol test or repeatedly asking a suspect to give a breath sample are not 'interrogations.' If the police limit themselves to these sorts of questions, they are not interrogating a DWI suspect.

*Id.* at 531 [internal citations omitted]. *Morris* similarly rejected the claim that the disclosures required by Article 38.22 were required in the blood/breath sampling disclosures. *See also Hernandez v. State*, No. 08-05-00384-CR, 2007 WL 867651 at *2 (Tex. App.--El Paso, Mar. 22 2007, no pet.)(not designated for publication).

Appellant points us to those cases where the police elicited substantive statements beyond those needed to accomplish a statutory warning or field sobriety test. In *Pennsylvania v. Muniz*, for instance, the court held that statements made during a field sobriety test were admissible, but the answer to an unscripted additional question was not. 496 U.S. at 592, 110 S.Ct. at 2645. The officer in *Muniz* asked the defendant, what year was it when you were six years old? *Id*. The defendant fumbled his answer to that question, which the State then attempted to use as substantive evidence of intoxication. But Appellant fails to point us to any specific statement

here which bore on his guilt. Officer Gandara, for instance, did not testify that Appellant made any particular incriminating statement, such as the number of drinks that he had. Nor does Appellant direct to us to objections made to any specific statement offered to the jury.[6] We agree with the State that it would subvert our role in the appellate process to pour through the record to construct such specific arguments. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex.Crim.App. 1995)(appellate court not obligated to search through record to verify an appellant's claim); *Busby v. State*, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008)(appellate court not obligated to construct and compose issues and arguments). Accordingly, we overrule Issue One.

## VIDEOTAPING THE CONSENT INTERVIEW

The Texas Family Code provides that when a peace officer apprehends a "child" they should promptly take the child to a "juvenile processing office" or in lieu of that, to another specified caretaker (such as a parent, guardian, or school principal). TEX.FAM.CODE ANN. § 52.02(a)(West 2014). One of those specified caretakers includes a medical facility if the child requires medical attention. *Id.* at §52.02(a)(5). The Code provides an exception, however, when the officer has reasonable grounds to believe that the child has been operating a motor vehicle in a public place while having any detectable amount of alcohol. Under Section 52.02 (c), *before* taking the child to one of the specified caretakers set out in subsection (a), the officer may take the child for a blood or breath sample. *Id*. But when the officer does so, the taking of the blood or breath sample should be videotaped. *Id*. at. §52.02(d).

---

[6] Even constitutional errors may be waived by a failure to object at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990). Further, "a party must object each time the inadmissible evidence is offered or obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003). While the *voir dire* of Officer Gandara could be considered as a part of a hearing on a motion to suppress, and thus preserve the Fourth Amendment issue, the Fifth Amendment/*Miranda*/Article 38.22 issues did not come up until afterwards when Officer Gandara testified to before the jury.

For the purposes of this statute, a child is defined as anyone over nine, but under seventeen years of age, or a person:

> [S]eventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age.

TEX.FAM.CODE ANN. § 51.02(2)(B).  Appellant was seventeen at the time, but was not alleged to have engaged in prior delinquent conduct, nor in need of supervision.  He was an adult for the purposes of the Texas Penal Code.  TEX.PENAL CODE ANN. § 8.07(b)(West Supp. 2014).[7]  His argument here is that treating ordinary seventeen-year-olds differently from those who are delinquent, or in need of supervision, violates his rights under the Equal Protection Clause to the United State Constitution.  In Appellant's view, a law-abiding seventeen-year-old is given less protection than one who is delinquent or in need of supervision, the latter being entitled to have the consent process videotaped.

The State first challenges Appellant's standing to make this claim.  We agree.  Appellant must show that the statutory scheme is unconstitutional as applied to him.  *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 154-55, 99 S.Ct. 2213, 2223-24, 60 L.Ed.2d 777 (1979); *Parent v. State*, 621 S.W.2d 796, 797 (Tex.Crim.App. 1981).  In *Parent*, for instance, the defendant complained that a then existing provision of the Penal Code allowed promiscuity as a defense to deviate sexual intercourse with an underage person of the opposite sex, but not for one of the same sex.  *Id*.  As here, the defendant claimed this violated his equal protection rights.  But the statutory defense only applied to victims who were fourteen years or

---

[7] We note that a minor, defined as anyone under age twenty-one, can be charged under the Alcohol Beverage Code for driving under the influence if they have any detectable amount of alcohol in their system.  TEX.ALCO.BEV.CODE ANN. § 106.041 (West Supp. 2014).  That charge differs from driving while intoxicated under TEX. PENAL CODE ANN. § 49.04 (d)(West Supp. 2014), and the two are not in conflict with each other.  *Findlay v. State*, 9 S.W.3d 397, 400 (Tex.App.--Houston [14th Dist.] 1999, no pet.).  In this case, the Information made a specific reference to the 0.15 blood alcohol level, indicated Appellant was charged under the Penal Code.

older, and the victim in *Parent* was thirteen years old at the time. *Id.* Because the statute would not have applied to him in any event, the defendant simply lacked standing to raise the equal protection argument. *Id.*

The same logic applies here. When officers apprehend a child, they must deliver the child to a juvenile processing office, or another specified caretaker. TEX.FAM.CODE ANN. § 52.02(a). As an exception to that delivery requirement, the officer may first obtain a blood sample when the officer suspects the child was driving while intoxicated. *Id.* at § 52.02(c). But in this case, Appellant was already with one of the designated caretakers specified in the statute-- here a hospital. The language of the statute does not require video-taping when the child is already with such a caretaker. That requirement applies only if the officer first takes the child for a blood or breath sample *before* the child is taken to a designated caretaker. Accordingly, because the video-taping requirement would not apply to any seventeen-year-old in Appellant's situation, he lacks standing to complain of its application to him. *Parent*, 621 S.W.2d at 797.

But even if we reached the merits, Appellant's argument would fail. The Equal Protection Clause of the Fourteenth Amendment essentially requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). The classification at issue here is between seventeen-year-olds with no prior criminal record, and those with prior allegations of delinquencies, or a need for supervision. Neither group is within a suspect classification, nor implicates a fundamental right, and the statute is therefore reviewed under the rationale basis test.[8] *Id.* at 440, 105 S.Ct. at 3254-55; *see also City of New Orleans v. Dukes*, 427 U.S. 297,

---

[8] Appellant relies upon *Salinas v. Texas*, ___U.S.___, 133 S.Ct. 2174, 186 L.Ed.2d 376 (2013) which holds that in a non-custodial interview, a defendant waives his Fifth Amendment right to remain silent if he does not invoke it. Appellant appears to argue that because some seventeen-year-olds would have the consent process videotaped, and another not, one group would have an easier time proving that they invoked their right to remain silent. From this,

13

303-04, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976). Under this test, the Legislature's classification need only be rationally related to a legitimate state purpose or interest to survive an equal protection challenge. *See City of Cleburne,* 473 U.S. at 439-40, 105 S.Ct. at 3254. We also presume the constitutionality of the statute and accord the legislature wide latitude in the exercise of its police powers. *Dukes*, 427 U.S. at 303; 96 S.Ct. at 2517. We easily find a rational basis for what the legislature has done.

Section 52.02(d) requires that children who are asked to give a blood sample away from their parents, or other designated caretaker, have the benefit of a videotape to document the process. Consent and coercion issues with children might logically require a more discerning evaluation than that for adults. And the Family Code provides that certain seventeen-year-olds are included in the definition of a child--those who by prior conduct have demonstrated a lack of maturity. The Legislature could well have reasoned that this subgroup of seventeen-year-olds, as demonstrated by their past history of delinquency, have acted more like children and less like adults. But those seventeen-year-olds who have no such record can be treated as adults. This classification is rationale and we fail to see how it violates the equal protection guarantees. We therefore overrule Issue Two and affirm the judgment of conviction.

November 4, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

Appellant reasons that a fundamental right is imperiled which invokes strict scrutiny. But this seems a false issue in that the blood sampling process is not even a custodial interrogation. *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 922-23, 74 L.Ed.2d 748 (1983). Even so, the video-taping only relates to proving or disproving a claimed violation of a right, not whether the right itself was ever violated.